James H.M. Sprayregen, P.C.
Paul M. Basta
Edward O. Sassower
Chad J. Husnick
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MSR RESORT GOLF COURSE LLC, *et al.*,[1] | ) | Case No. 11-10372 (SHL) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF MSR RESORT GOLF COURSE LLC, *ET AL.*, FOR THE ENTRY OF
INTERIM AND FINAL ORDERS AUTHORIZING THE CONTINUED USE OF
(A) EXISTING CASH MANAGEMENT SYSTEM, (B) EXISTING BANK ACCOUNTS,
AND (C) EXISTING BUSINESS FORMS**

---

[1]   The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number include:  MSR Resort Golf Course LLC (7388); MSR Biltmore Resort, LP (5736); MSR Claremont Resort, LP (5787); MSR Desert Resort, LP (5850); MSR Grand Wailea Resort, LP (5708); MSR Resort Ancillary Tenant, LLC (9698); MSR Resort Biltmore Real Estate, Inc. (8464); MSR Resort Desert Real Estate, Inc. (9265); MSR Resort Hotel, LP (5558); MSR Resort Intermediate Mezz GP, LLC (3864); MSR Resort Intermediate Mezz LLC (7342); MSR Resort Intermediate Mezz, LP (3865); MSR Resort Intermediate MREP, LLC (9703); MSR Resort Lodging Tenant, LLC (9699); MSR Resort REP, LLC (9708); MSR Resort Senior Mezz GP, LLC (9969); MSR Resort Senior Mezz LLC (7348); MSR Resort Senior Mezz, LP (9971); MSR Resort Senior MREP, LLC (9707); MSR Resort Silver Properties, LP (5674); MSR Resort SPE GP II LLC (5611); MSR Resort SPE GP LLC (7349); MSR Resort Sub Intermediate Mezz GP, LLC (1186); MSR Resort Sub Intermediate Mezz LLC (7341); MSR Resort Sub Intermediate Mezz, LP (1187); MSR Resort Sub Intermediate MREP, LLC (9701); MSR Resort Sub Senior Mezz GP, LLC (9966); MSR Resort Sub Senior Mezz LLC (7347); MSR Resort Sub Senior Mezz, LP (9968); and MSR Resort Sub Senior MREP, LLC (9705). The location of the debtors' service address is:  c/o CNL-AB LLC, 1251 Avenue of the Americas, New York, New York 10020.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for the entry of an interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) authorizing the continued use of (i) the existing cash management system (the "Cash Management System"), (ii) the existing bank accounts (the "Bank Accounts"), and (iii) the existing business forms, and (b) granting such other relief as is just and proper. In support of this Motion, the Debtors respectfully state as follows.[2]

## Jurisdiction

1. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105, 345, 363, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2015-2 and 9013-1(m) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules").

## Relief Requested

4. By this Motion, the Debtors hereby seek the entry of interim and final orders:

---

[2] The facts and circumstances supporting this Motion are set forth in the *Declaration of Daniel Kamensky of MSR Resort Golf Course LLC (A) In Support of Debtors' Chapter 11 Petitions and First Day Motions and (B) Pursuant to Local Rule 1007-2* (the "First Day Declaration"), filed contemporaneously herewith.

(a)     authorizing, but not directing, continued use of the (i) Cash Management System, (ii) Bank Accounts (as well as authorizing the Debtors to open and close bank accounts), and (iii) Business Forms (as defined below); and

(b)     authorizing the Debtors' and their non-debtor affiliates' Banks (as defined below) to continue to maintain, service, and administer the Bank Accounts and to debit the Bank Accounts in the ordinary course of business on account of:  (i) all checks drawn on the Bank Accounts and cashed at the Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of the Debtors' Bank Accounts prior to the Petition Date that have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent that the Debtors were responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Banks as service charges for the maintenance of the Cash Management System.

5.      In addition, the Debtors request that the Court schedule a final hearing within approximately 25 days of the Petition Date to consider approval of the Motion on a final basis.

## **Background**

6.      On the date hereof (the "Petition Date"), MSR Resort Golf Course LLC and 29 of its affiliates each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently herewith, the Debtors filed a motion seeking joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

7.      The Debtors invest in and own five luxury hotel and resort properties, specifically (a) the Grand Wailea Resort Hotel & Spa ("Grand Wailea") in Wailea, Hawaii, (b) the La Quinta Resort & Club PGA West ("La Quinta") in La Quinta, California, (c) the Arizona Biltmore Resort & Spa ("Arizona Biltmore") in Phoenix, Arizona, (d) the Doral Golf Resort & Spa ("Doral") in Miami, Florida, and (e) the Claremont Resort & Spa ("Claremont") in Berkeley, California (collectively, the "Resorts").  The Resorts are managed by third-party managers (the

"Resort Managers") and operate as independent Resorts. The Debtors' business is managed by Pyramid Resort Asset Management LLC (the "Asset Manager").

8. The Resorts' employees are provided by the Resort Managers and most of the Debtors' corporate functions are provided by the Asset Manager. Consequently, the Debtors do not have any employees.

9. As of November 30, 2010, the Debtors' financial statements reflect consolidated assets totaling approximately $2.2 billion and consolidated liabilities totaling approximately $1.9 billion. Consolidated revenues for the three months ending December 31, 2010, were approximately $121 million. Consolidated 2010 annual revenues were approximately $465 million. Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to these chapter 11 filings is contained in the First Day Declaration, filed contemporaneously herewith.

**I.     The Debtors' Prepetition Indebtedness.**

10. Certain of the Debtors are borrowers (the "Mortgage Borrowers")[3] under the mortgage loan (the "Mortgage Loan") made pursuant to that certain Loan and Security Agreement (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the "Mortgage Loan Agreement"), dated January 9, 2006, by and among the Mortgage Borrowers and Bank of America, National Association, as successor by merger to LaSalle Bank National Association, as trustee for the Certificate Holders of Deutsche Mortgage & Asset Receiving Corporation, COMM 2006-CNL2 Commercial Mortgage Backed Certificates (as

---

[3]     The Mortgage Borrowers are as follows:  MSR Biltmore Resort, LP; MSR Grand Wailea Resort LP; MSR Desert Resort, LP; MSR Resort Hotel, LP; MSR Resort Golf Course LLC; MSR Resort Silver Properties, LP; and MSR Claremont Resort, LP.

successor in interest to German American Capital Corporation, and together with its successors and assigns, the "Mortgage Lender").

11.     Pursuant to the Mortgage Loan Agreement, and the other documents executed in connection therewith (together with the Mortgage Loan Agreement, the "Mortgage Loan Documents"), the Mortgage Lender extended financing in the aggregate principal amount of $1 billion to the Mortgage Borrowers.  As of the Petition Date, the principal amount of approximately $1 billion was outstanding under the Mortgage Loan.

12.     The Mortgage Loan is secured by cross-collateralized and cross-defaulted first priority mortgages (the "Prepetition Mortgages") on certain of the Debtors' properties, including the Resorts (collectively, the "Mortgaged Properties") and the products and proceeds thereof, including the cash generated by Resort operations.  In addition to the Prepetition Mortgages, the Mortgage Loan is secured by pledges of the equity interest held in certain other Debtor entities. All of the Debtors' cash generated from the Mortgaged Properties, wherever located, whether as original collateral or profits or proceeds of the Mortgaged Properties or other Prepetition Collateral, constitutes cash collateral (the "Cash Collateral") under the Mortgage Loan Documents.

13.     Subsequent to the closing date of the Mortgage Loan Agreement, German American Capital Corporation's interests in the Mortgage Loan were deposited into a trust (the "Trust").  In turn, certain investors (the "Certificate Holders") bought interests in the Trust.  The rights of the Certificate Holders are governed by a trust and servicing agreement which provides Midland Loan Services, Inc., in its capacity as special servicer (the "Special Servicer") of the Mortgage Loan, with authority to consent to the use of Cash Collateral.

14.     In addition to the Mortgage Loan, certain of the Debtors (the "<u>Mezzanine Borrowers</u>")[4] are obligated under four separate mezzanine loan agreements, each dated as of January 9, 2006. As of the Petition Date, the principal amount of approximately $525 million in the aggregate was outstanding under the Mezzanine Loans.

## II.     The Debtors' Prepetition Cash Management System.

### A.     Operating Level Cash Management.

15.     The Mortgage Borrowers own the land, building, and improvements on the Resort properties. Certain Debtors (the "<u>Tenant Entities</u>")[5] lease the Resort properties from the Mortgage Borrowers and pay rent to the Mortgage Borrowers in accordance with the terms of various lease agreements. The Tenant Entities rely on the Resort Managers to operate the Resorts.

16.     The Debtors generate and receive cash from the operation of their Resorts. Specifically, cash is generated from revenues related to hotel rooms, food and beverage, spas, golf memberships and fees, destination services, parking, store rentals and concessions, resort charges, and other miscellaneous income (collectively, "<u>Revenue</u>").

17.     Except with respect to the Tenant Entity for Doral, the Revenue collected at each Resort is received by the respective Resort Manager and deposited into certain accounts, including various depository accounts and disbursement/operating accounts (the "<u>Operating Accounts</u>"), which are held by the Tenant Entities. It is the Operating Accounts held

---

[4]     The Mezzanine Borrowers are as follows: MSR Resort Senior Mezz LLC; MSR Resort Senior Mezz, LP; MSR Resort Senior MREP, LLC; MSR Resort Sub Senior Mezz LLC; MSR Resort Sub Senior Mezz, LP; MSR Resort Sub Senior MREP, LLC; MSR Resort Intermediate Mezz LLC; MSR Resort Intermediate Mezz, LP; MSR Resort Intermediate MREP, LLC; MSR Resort Sub Intermediate Mezz LLC; MSR Resort Sub Intermediate Mezz, LP; and MSR Resort Sub Intermediate MREP, LLC.

[5]     The Tenant Entities are MSR Resort Lodging Tenant, LLC and MSR Resort Ancillary Tenant, LLC.

by the respective Tenant Entities that fund the majority of the Resort operating costs. The Resort Managers have signing authority on the Operating Accounts. Furthermore, each of the Resorts has capital expenditure ("Capex") and furniture, fixture, and equipment ("FF&E") accounts holding funds that are set aside to make certain improvements to the Resorts, as necessary. The Capex and FF&E accounts are held in the names of the applicable Mortgage Borrower.

18. Doral's cash management system operates in a different manner from the other Resorts. The majority of Doral's Revenue is paid into a centralized account (the "Centralized Account") held by Marriott Business Services ("Marriott"), an affiliate of Doral's Resort Manager. As its name implies, the Centralized Account includes funds deposited by other hotels, both related and unrelated to the Debtors. Records of Doral's proportionate share of funds in the Centralized Account are kept by Marriott, which collects Doral's contributions. Doral, in turn, may only withdraw funds up to their proportionate share. Records of Doral's withdrawals from the Centralized Account are also maintained by Marriott. Payment for the majority of operating expenses generated by Doral is drawn from the Centralized Account. After payment of operating expenses is complete, Marriott then transfers, on a weekly basis, any remaining Revenue to Doral's single Operating Account.

19. In addition to the Cash Management System described above, which applies to the Resorts, each of the Debtors that operate real estate brokerage businesses maintains its own Bank Accounts. Specifically, MSR Resort Biltmore Real Estate, Inc. ("Biltmore Real Estate") is responsible for managing certain villa rental units located at the Arizona Biltmore, and, in exchange, receives a designated percentage of the Revenue associated therewith. All receipts for the rental units are deposited into Arizona Biltmore's main depository account, held in the name of MSR Resort Lodging Tenant, LLC ("Lodging Tenant"). On a daily basis rental unit receipts

are wired from Arizona Biltmore's main depository account to Biltmore Real Estate's single Operating Account. Forty-five days following the close of each month, Biltmore Real Estate disburses, via check to the rental unit owners and the Arizona Biltmore, their respective shares of the Revenue from the rental units. The Arizona Biltmore's share of the rental unit Revenue is deposited into Arizona Biltmore's main Operating Account, which is in the name of Lodging Tenant, and treated in the same fashion as other Revenue generated by the Arizona Biltmore.

20.    Another Debtor, MSR Desert Real Estate, Inc. ("Desert Real Estate"), owns a property brokerage business that is associated with La Quinta and also has various Bank Accounts in its name. Desert Real Estate manages funds under rental management arrangements with rental unit owners that are similar to Arizona Biltmore's arrangement described above. In this instance, any Revenue generated by rental unit bookings at La Quinta is collected directly through La Quinta's main depository account, which is also in the name of the Lodging Tenant. The portion of the profit that is due to the owners of the respective rental units is then transferred to a trust account in Desert Real Estate's name, and is subsequently distributed to the rental unit owners. The funds remaining in La Quinta's Operating Account relating to the rental units (*i.e.*, La Quinta's percentage of the Revenue under the rental management arrangement) are treated in the same fashion as other Revenue generated by La Quinta.

21.    Desert Real Estate also operates a brokerage business that sells and leases homes near La Quinta. In exchange for leasing and managing homes in the area, Desert Real Estate earns a percentage of the revenue generated from the leases, which is deposited into a trust account and from there into an Operating Account, both in Desert Real Estate's name. Furthermore, any Revenue generated from the sale of property by a Desert Real Estate broker is also deposited into an Operating Account in Desert Real Estate's name, and a fee is paid out of

that account to the broker who facilitated the sale. Excess funds, if any, in Desert Real Estate's Operating Account related to the lease or sale of homes adjacent to La Quinta are deposited into La Quinta's Operating Account.

**B.     Cash Collection and Distribution.**

22.     After funds are deducted, as applicable, from the various Operating Accounts to pay for operations at each of the Resorts and working capital is retained, the remaining Revenue is distributed, on a monthly basis, into a single cash management holding account (the "Cash Management Account") at PNC Bank, National Association ("PNC Bank") in the name of the Mortgage Borrowers.

23.     Pursuant to the Mortgage Loan Agreement, the parties thereto agreed on a priority of payments for the Debtors' debt obligations and established a number of separate sub-accounts, the funds of which would be available to satisfy certain categories of the Debtors' debt obligations.  On the first calendar day of every month, PNC Bank, at the Special Servicer's direction, allocates the funds in the Cash Management Account to each of the sub-accounts (or directly to lender-controlled lockboxes at the written direction of the respective lenders), as provided in the Mortgage Loan Agreement (the "Waterfall").  Disbursements through the Waterfall are allocated for the payment of debt service on the Mortgage Loan and the Mezzanine Loans, payment of special servicing fees, and reimbursement of the Special Servicer's expenses, among other things, in the requisite payment priority.  Generally, there is no excess cash in the Cash Management Account following the disbursement through the Waterfall; however, in the event that there is excess cash, 80% is to be deposited in a Mortgage Lender-controlled lockbox and 20% is to be deposited into a non-debtor affiliate's lockbox.

24.     A diagram illustrating the Debtors' prepetition Cash Management System is attached as **<u>Exhibit D</u>** hereto.

### C. **Proposed Postpetition Cash Management System.**

25.     The Debtors request that their prepetition Cash Management System continue uninterrupted during the course of these chapter 11 cases, except as permitted in the order (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the "Cash Collateral Order") approving the *Motion of MSR Resort Golf Course LLC, et al., for the Entry of an Interim Order Authorizing Cash Collateral Use, Granting Related Relief, and Scheduling a Second Interim Hearing*, filed contemporaneously herewith, (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the "Cash Collateral Motion"). Preserving the Cash Management System will help to, among other things, ensure the uninterrupted operations of the Resorts including, as discussed above, facilitating the ability of the Debtors and the Resort Managers to pay vendors and other third parties whose goods and services are critical to the Resorts' business.    Accordingly, the Debtors propose to leave unaltered the cash collection and distribution systems at the property and concentrated cash management level.

26.     The Debtors further propose that with respect to cash management above the property level, the Revenue continue to be collected from the various Operating Accounts at the Resorts and transferred into the various Bank Accounts.  Pursuant to Cash Collateral Motion, the Debtors' use of funds in the Bank Accounts will be subject to the Budget (as defined in the Cash Collateral Motion).

27.     Continuation of the Cash Management System, and the use of the Cash Collateral, as requested in the Cash Collateral Motion, will ensure that the Debtors' business persists uninterrupted and that the Debtors have the wherewithal to fund amounts necessary to oversee and manage their operations and these chapter 11 cases.

**III.    The Debtors' Existing Business Forms and Checks.**

28.    In the ordinary course of business, the Debtors use a variety of pre-printed checks and business forms.  To minimize expenses to their estates and avoid unnecessary disruption to their operations, the Debtors request authority to continue to use all correspondence and business forms, including, without limitation, letterhead, purchase orders, and invoices (collectively, the "Business Forms") as such forms were in existence immediately before the Petition Date, rather than require the Debtors to incur the expense, delay, and business disruption of immediately stopping the use of their existing Business Forms and require them to order and use entirely new business forms that strictly comply with the U.S. Trustee Chapter 11 Guidelines for the Southern District of New York (the "U.S. Trustee Guidelines").  The Debtors will replace their Business Forms with new forms identifying their status as debtors in possession as their existing stock is depleted.  The Debtors will use their best reasonable efforts to print "Debtor in Possession" on their Business Forms and checks.

**Basis for Relief**

**I.    The Court Should Approve the Debtors' Continued Use of Their Cash Management System.**

    **A.    The Continued Use of the Debtors' Cash Management System Is Essential to Their Operations and Restructuring Efforts.**

29.    The Debtors' Cash Management System constitutes an ordinary course, essential business practice providing significant benefits to the Debtors including, among other things, the ability to (a) control corporate funds, (b) ensure the availability of funds when necessary, and (c) reduce costs and administrative expenses by facilitating the movement of funds and the development of timely and accurate account balance information.

30.    The U.S. Trustee Guidelines require, among other things, that a debtor: (a) establish one debtor in possession account for all estate funds required for the payment of

taxes (including payroll taxes); (b) close all existing bank accounts and open new "debtor in possession" accounts; (c) maintain a separate "debtor in possession" account for cash collateral; and (d) obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and type of account.

31.    The operation of the Debtors' business requires that the Cash Management System, continue during the pendency of these chapter 11 cases. Requiring the Debtors to adopt a new, segmented cash management system at this critical stage of these chapter 11 cases would be expensive, create unnecessary administrative burdens, and be extraordinarily disruptive to the operation of the Debtors' business. There are approximately 37 different Bank Accounts related to the Debtor's operations, and the current Cash Management System has seamlessly and efficiently operated to collect the revenue generated at the property levels and disburse such funds to the appropriate creditors in a timely fashion. Any disruption outside of the limited modifications proposed herein, and permitted in the Cash Collateral Order, could have a severe and adverse impact on the Debtors' ability to reorganize. Consequently, maintenance of the existing Cash Management System, except as permitted in the Cash Collateral Order, is essential and in the best interests of all creditors and other parties in interest. Accordingly, the Debtors request that the Court authorize and direct the Banks to transfer all available funds from the relevant Operating Accounts at the Resorts to the Bank Accounts. Funds in the Bank Accounts, and the use thereof, shall be subject to the terms of the Budget.

32.    As discussed above, the Debtors' business and financial affairs are complex, requiring the Debtors to collect, disburse, and transfer funds through numerous Bank Accounts in the United States. In furtherance of the foregoing, the Debtors request that all banks at which their Bank Accounts are maintained (collectively, the "Banks") be authorized and directed to

continue to administer such accounts as they were maintained prepetition, without interruption and in the usual and ordinary course of business. The Banks in which disbursement accounts exist should also be authorized and directed to pay any and all drafts, wires, and automated clearing house transfers issued on the Bank Accounts for the payment of any claims arising on and after the Petition Date so long as sufficient funds are in these Banks Accounts.

33. The Debtors will continue to maintain all receipts and disbursements and records of all postpetition transfers within the Cash Management System in the same manner as such receipts and disbursements were maintained prior to the Petition Date. In this way, all transfers and transactions will be properly documented, and accurate balances will be maintained. As a result, the Debtors will be able to accurately document and record the transactions occurring within the Cash Management System for the benefit of all parties in interest. The Debtors will maintain their books and records relating to the Cash Management System to the same extent the books and records were maintained before the Petition Date.

34. The continuation of the Debtors' Cash Management System is permitted by section 363(c)(1) of the Bankruptcy Code. Section 363(c)(1) authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Section 363(c)(1) provides a debtor in possession with the flexibility to engage in the ordinary course transactions required to operate its business without unneeded oversight by its creditors or the court. *See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *In re Enron Corp.*, Case No. 01-16034, 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. Mar. 21, 2003); *Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997).

35.     Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system.  *See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).  A debtor's request for authorization to continue to use its existing cash management system has been held to be entirely consistent with section 363(c)(1), which allows a debtor-in-possession to "use property of the estate in the ordinary course of business."  *See Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985).

36.     In addition, courts have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part* and *rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied sub nom. Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 510 U.S. 1110 (1994).  The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient."  *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets"); *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987) (noting that requests to continue utilizing existing cash management systems is a relatively "simple matter").

37.     Accordingly, the Debtors seek authority under section 363(c)(1) to continue the collection, concentration, and disbursement of cash pursuant to their Cash Management System, as described herein.

**B.    The Court Should Authorize the Banks to Continue Maintaining, Servicing, and Administering the Debtors' Bank Accounts in the Ordinary Course of Business.**

38.    The Debtors submit that parties in interest will not be prejudiced or injured by the Debtors' maintenance of their Bank Accounts in the ordinary course of business.  The Debtors believe that replacing their existing Bank Accounts with new accounts as of the Petition Date pursuant to the U.S. Trustee Guidelines would needlessly interrupt their operations and impair their efforts to preserve the value of their estates and reorganize in an efficient manner.

39.    Thus, the Debtors respectfully request that the Court authorize and direct the Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business.  In this regard, the Banks should be authorized and directed to receive, process, honor, and pay any and all checks and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto; *provided* that any check, advise, draft, or other notification that the Debtors advised the Banks to have been drawn, issued, or otherwise presented prior to the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

40.    The Debtors further request that the Court authorize and direct the Banks to accept and honor all representations from the Debtors as to which checks, drafts, or wires should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, or wires are dated prior to, on, or subsequent to the Petition Date. The Debtors also request that, to the extent a Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion either (a) at the direction of the Debtors, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite the above-described protective measures,

such Bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored postpetition. The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid pursuant to a Court order or otherwise.

41.     In the ordinary course of business, the Banks charge, and the Debtors will pay, honor, or allow the deduction from the appropriate account, certain service charges and other fees, costs, and expenses (collectively, the "Bank Fees"). The Debtors respectfully request that the Court authorize the Banks to (a) continue to charge the Debtors the Bank Fees and (b) charge-back returned items to the Bank Accounts, whether such items are dated prior to, on, or subsequent to the Petition Date, in the ordinary course of business. The Debtors further request that the Court order that liens on any of the Bank Accounts granted to creditors will not have priority over the Bank Fees of the respective Bank at which the Bank Account is located.

42.     Courts in this jurisdiction and others have regularly waived the U.S. Trustee Guidelines in similar large chapter 11 cases on the grounds that they could potentially hinder a debtor's restructuring efforts. *See, e.g.*, *In re Innkeepers USA Trust*, Case No. 10-13800 (SCC) (Bankr. S.D.N.Y. Sept. 2, 2010); *In re Neff Corp.*, Case No. 10-12610 (SCC) (Bankr. S.D.N.Y. June 9, 2010); *In re Citadel Broad. Corp.*, Case No. 09-17442 (BRL) (Bankr. S.D.N.Y. Feb. 3, 2010); *In re Reader's Digest Ass'n, Inc.*, Case No. 09-23529 (RDD) (Bankr. S.D.N.Y. Nov. 20, 2009); *In re Lear Corp.*, Case No. 09-14326 (ALG) (Bankr. S.D.N.Y. July 31, 2009); *In re ION Media Networks, Inc.*, Case No. 09-13125 (JMP)

(Bankr. S.D.N.Y July 2, 2009); *In re General Growth Props., Inc.*, Case No. 09-11977 (ALG) (Bankr. S.D.N.Y. May 14, 2009).[6]

### C. Maintaining the Existing Cash Management System Will Not Harm Parties in Interest.

43.     The Debtors' continued use of their Cash Management System will greatly facilitate their transition into chapter 11 by, among other things, avoiding administrative inefficiencies and expenses and minimizing delays in payment of postpetition debts.  The Debtors respectfully submit that parties in interest will not be harmed by their maintenance of the existing Cash Management System including their Bank Accounts, because the Debtors, with the help of the Asset Manager and Resort Managers, have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred prior to the Petition Date.  Specifically, with the assistance of their advisors and the Asset Manager and Resort Managers, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts without the prior approval of the Debtors' finance department.  In light of such protective measures, the Debtors submit that maintaining the Cash Management System is in the best interests of their estates and creditors.

44.     In addition, the Cash Management System is similar to those commonly employed by corporate entities of comparable size and complexity to the Debtors.  The Cash Management System provides the Debtors and, where applicable, the Asset Manager with the ability to:  (a) efficiently create status reports on the location and amount of funds, which, in turn, allows management to track and control such funds; (b) ensure cash availability; and

---

[6]    Because of the voluminous nature of the orders cited herein, they are not attached to the Motion.  Copies of these orders are available on request of Debtors' proposed counsel.

(c) reduce administrative costs through a centralized method of coordinating the collection and movement of funds.

      **D.**      **The Court Should Authorize the Debtors to Continue Using Debit, Wire, and ACH Payments.**

45.      The U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement. The Debtors respectfully request that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check. In the ordinary course of business, the Debtors conduct transactions by debit, wire transfer, automated clearing house payments ("ACH Payments"), and other similar methods. If the Debtors' ability to conduct transactions by debit, wire transfer, ACH Payment, or other similar methods is impaired, they may be unable to perform under certain contracts, their business operations may be unnecessarily disrupted, and their estates will incur additional costs. Indeed, the Debtors are required by certain federal and state taxing authorities to submit tax payments electronically through wire transfer or ACH Payment and failure to do so results in the imposition of penalties.

**II.**      **The Court Should Authorize the Debtors to Continue Using Their Existing Business Forms.**

46.      The Debtors submit that parties in interest will not be prejudiced if the Debtors are authorized to continue to use their Business Forms substantially in the forms existing immediately prior to the Petition Date. After the Petition Date the Debtors will use their best reasonable efforts to print "Debtor in Possession" on their Business Forms and checks, and will order new Business Forms with a "Debtor in Possession" designation once their existing stocks are depleted. The Debtors submit that such efforts protect the interests of parties conducting business with the Debtors on a postpetition basis while, at the same time, avoiding unnecessary expenses and administrative delays at this critical time.

47.     Parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and, thus, changing business forms is unnecessary and unduly burdensome.  In other large cases, courts in this jurisdiction and others have allowed debtors to use their prepetition business forms without the "debtor in possession" label, while making reasonable best efforts to print "Debtor in Possession" on their Business Forms and checks, at least until the debtors' existing business form stock was depleted.  *See, e.g.*, *In re Innkeepers USA Trust*, Case No. 10-13800 (SCC) (Bankr. S.D.N.Y. Sept. 2, 2010); *In re Neff Corp.*, Case No. 10-12610 (SCC) (Bankr. S.D.N.Y. June 9, 2010); *In re Citadel Broad. Corp.*, Case No. 09-17442 (BRL) (Bankr. S.D.N.Y. Feb. 3, 2010); *In re Reader's Digest Ass'n, Inc.*, Case No. 09-23529 (RDD) (Bankr. S.D.N.Y. Nov. 20, 2009); *In re Lear Corp.*, Case No. 09-14326 (ALG) (Bankr. S.D.N.Y. July 31, 2009).

48.     If the relief requested herein is granted, the Debtors will implement appropriate mechanisms to ensure that no payments will be made on account of debts incurred prior to the Petition Date (other than those authorized by the Court).  To prevent the inadvertent, unauthorized payment of prepetition claims, the Debtors will work closely with the Banks to ensure that appropriate procedures are in place to prevent checks that were issued prepetition from being honored without the Court's approval.

III.    **Cause Exists for Waiving the Investment and Deposit Guidelines of Section 345 of the Bankruptcy Code.**

49.     Section 345 of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a).  For deposits that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit

of the United States," section 345(b) requires the estate to obtain from the entity with which the money is deposited a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, unless the Court for cause orders otherwise. 11 U.S.C. § 345(a)-(b). In the alternative, the estate may require the entity to deposit governmental securities pursuant to 31 U.S.C. § 9303. Section 9303 provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may provide a governmental obligation. 31 U.S.C. § 9303.

50.     Strict compliance with the requirements of section 345(b) of the Bankruptcy Code would, in a case such as this, be inconsistent with section 345(a), which permits a debtor in possession to make such investments of money of the estate "as will yield the maximum reasonable net return on such money." Thus, in 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," Congress amended section 345(b) of the Bankruptcy Code to provide that its strict investment requirements may be waived or modified if the Court so orders "for cause." 140 Cong. Rec. H. 10,767 (Oct. 4, 1994), 1994 WL 54773.

51.     The majority of the Bank Accounts are maintained at Banks that have been approved by the U.S. Trustee as authorized depositories ("Authorized Depositories"). Accordingly, the Debtors believe that any funds that are deposited in the Authorized Depositories are secure, and, therefore, the Debtors are in compliance with section 345 of the Bankruptcy Code with respect to such Bank Accounts. Only a small percentage of the Bank Accounts are maintained at Banks that are not Authorized Depositories. Specifically, the Debtors hold four Bank Accounts at Pacific Western Bank and five Bank Accounts at Bank of Hawaii, none of which are Authorized Depositories, but all of which are insured by the Federal Deposit Insurance Corporation. Moreover, the vast majority of the Debtors' cash flows through

those lending institutions approved under the U.S. Trustee Guidelines. Accordingly, the Debtors seek to waive the requirements of section 345(b).

52.     In the alternative, the Debtors request a 45-day extension, without prejudice to the Debtors' rights to seek further extensions (or such additional time to which the U.S. Trustee may agree) of the time period in which to either comply with section 345(b) of the Bankruptcy Code with respect to Bank Accounts maintained at Banks which are not Authorized Depositories or to make other arrangements that would be acceptable to the U.S. Trustee under the circumstances. The Debtors will use this time to discuss with the U.S. Trustee whether any modifications may be necessary. *See In re Serv. Merchandise Co., Inc.*, 240 B.R. 894 (Bankr. M.D. Tenn. 1999) (noting that some of the factors to consider in determining whether cause exists "for relief from the strictures of § 345(b)" is whether benefits to the debtors outweigh the harm, if any, to the estate).

53.     If, pursuant to the foregoing discussions with the U.S. Trustee, it shall become necessary to alter the Cash Management System, the Debtors request authority to make such alterations to the Cash Management System. The Debtors anticipate that the alterations to the Cash Management System may include, without limitation, the opening of new Bank Accounts. Any such new Bank Accounts shall be opened at Banks that are Authorized Depositories.

54.     The Debtors request that the Court authorize and direct financial institutions to honor the Debtors' requests to open or close, as the case may be, the Bank Accounts or additional bank or investment accounts as may be necessary in connection with the foregoing.

### The Requirements of Bankruptcy Rule 6003 Have Been Satisfied

55.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For reasons discussed above, authorizing the Debtors to maintain the Cash Management

System and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## Motion Practice

56. This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Bankruptcy Rule 9013-1(a).

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

57. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of a property under Bankruptcy Rule 6004(h).

## The Debtors' Reservation of Rights

58. Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their right to contest any invoice or claim related to the relief requested herein in accordance with applicable non-bankruptcy law.

**<u>Notice</u>**

59.     The Debtors have provided notice of this Motion to:  (a) the Office of the U.S. Trustee for the Southern District of New York; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims; (c) the special servicer under the Debtors' prepetition secured mortgage loan and holders of the Debtors' prepetition mezzanine loans; (d) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (e) the Banks listed on **<u>Exhibit C</u>** attached hereto.  In light of the nature of the relief requested herein, the Debtors respectfully submit that no further notice is necessary.

**<u>No Prior Request</u>**

60.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, granting the relief requested herein and granting such other relief as is just and proper.

New York, New York
Dated:  February 1, 2011

*/s/ Paul M. Basta*
James H.M. Sprayregen, P.C.
Paul M. Basta
Edward O. Sassower
Chad J. Husnick
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

*Proposed Counsel to the Debtors and Debtors in Possession*

## EXHIBIT A

## Proposed Interim Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MSR RESORT GOLF COURSE LLC, *et al.*,[1] | Case No. 11-10372 (SHL) |
| Debtors. | (Joint Administration Requested) |

## INTERIM ORDER AUTHORIZING THE CONTINUED USE OF
## (A) EXISTING CASH MANAGEMENT SYSTEM, (B) EXISTING BANK ACCOUNTS,
## AND (C) EXISTING BUSINESS FORMS

Upon the motion (the "Motion")[2] of the Debtors, as debtors and debtors in possession (collectively, the "Debtors"), for the entry of an order (this "Order") authorizing the Debtors to (i) continue using their existing Cash Management System (ii) continue to use, with the same account numbers, all of their Bank Accounts, (iii) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession, (iv) close any bank accounts and/or open new accounts in the Debtors' sole discretion, and (v) maintain existing business forms; and upon the First Day Declaration; and the Court having found that the Court has jurisdiction over this matter

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number include: MSR Resort Golf Course LLC (7388); MSR Biltmore Resort, LP (5736); MSR Claremont Resort, LP (5787); MSR Desert Resort, LP (5850); MSR Grand Wailea Resort, LP (5708); MSR Resort Ancillary Tenant, LLC (9698); MSR Resort Biltmore Real Estate, Inc. (8464); MSR Resort Desert Real Estate, Inc. (9265); MSR Resort Hotel, LP (5558); MSR Resort Intermediate Mezz GP, LLC (3864); MSR Resort Intermediate Mezz LLC (7342); MSR Resort Intermediate Mezz, LP (3865); MSR Resort Intermediate MREP, LLC (9703); MSR Resort Lodging Tenant, LLC (9699); MSR Resort REP, LLC (9708); MSR Resort Senior Mezz GP, LLC (9969); MSR Resort Senior Mezz LLC (7348); MSR Resort Senior Mezz, LP (9971); MSR Resort Senior MREP, LLC (9707); MSR Resort Silver Properties, LP (5674); MSR Resort SPE GP II LLC (5611); MSR Resort SPE GP LLC (7349); MSR Resort Sub Intermediate Mezz GP, LLC (1186); MSR Resort Sub Intermediate Mezz LLC (7341); MSR Resort Sub Intermediate Mezz, LP (1187); MSR Resort Sub Intermediate MREP, LLC (9701); MSR Resort Sub Senior Mezz GP, LLC (9966); MSR Resort Sub Senior Mezz LLC (7347); MSR Resort Sub Senior Mezz, LP (9968); and MSR Resort Sub Senior MREP, LLC (9705). The location of the debtors' service address is: c/o CNL-AB LLC, 1251 Avenue of the Americas, New York, New York 10020.

[2] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The Final Hearing Date shall be _____, 2011 at __:__ a.m./p.m., prevailing Eastern Time.   Any objections or responses to the Motion shall be filed on or before _____, 2011, at 4:00 p.m., prevailing Eastern Time, and served on the parties, as required by the Local Bankruptcy Rules.

3.      The Debtors are authorized, but not directed, to continue using the Cash Management System as described in the Motion and as permitted in the Cash Collateral Order.

4.      The Debtors are authorized to:   (a) continue to use, with the same account numbers, the Bank Accounts in existence on the Petition Date, including, without limitation, those accounts identified on **Exhibit C** attached to the Motion; (b) treat the Bank Accounts for

all purposes as accounts of the Debtors as debtors in possession; (c) close any bank accounts and/or open new accounts in the Debtors' sole discretion; and (d) use, in their present form, all correspondence and business forms (including, without limitation, letterhead, purchase orders, and invoices), and other documents related to the Bank Accounts, without reference to their status as debtors in possession; *provided* that the Debtors will use their best reasonable efforts to print "Debtor in Possession" on their Business Forms and checks; *provided further*, that the Debtors will replace their existing stock of Business Forms with new forms identifying their status as debtors in possession as existing forms are depleted.

5.     Except as otherwise expressly provided in this Order, the Banks are authorized and directed to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business, and to receive, process, honor, and pay any and all checks, drafts, wires, and automated clearing house transfers issued and drawn on the Bank Accounts before or after the Petition Date by the holders or makers thereof, as the case may be.

6.     The Banks are authorized and directed to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court on account of: (a) checks drawn on the Bank Accounts that are presented for payment at the Banks or exchanged for cashier's checks prior to or after the Petition Date; (b) checks or other items deposited in the Bank Accounts prior to or after to the Petition Date that have been dishonored or returned unpaid for any reason (including associated fees and costs), to the same extent the Debtors were responsible for such items prior to or after the Petition Date; and (c) undisputed, outstanding service charges owed to the Banks as of the Petition Date on account of the maintenance of the Cash Management System, if any.

7.      Notwithstanding any other provision of this Order, no Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake made despite implementation of the protective measures outlined in the Motion, shall be deemed to be liable to the Debtors or their estates or otherwise in violation of this Order.

8.      The Banks are authorized to charge, and the Debtors are authorized to pay, honor, or allow any Bank Fees or charges associated with the Bank Accounts, and charge back returned items to the Bank Accounts in the ordinary course.

9.      The Banks are authorized and directed to pay obligations pursuant to this or any separate order of the Court.

10.      The Debtors are authorized to close any existing Bank Accounts as they may deem necessary or appropriate in their sole discretion.

11.      The Debtors are authorized to open any new Bank Account and all entities, including, without limitation, the Banks and credit card processors, are directed to comply with this Order to enable the Debtors to continue the use of their Cash Management System and any such new Bank Accounts; *provided* that if the Debtors open any new Bank Accounts, such new Bank Accounts shall be opened at Banks that are Authorized Depositories and the Debtors shall provide the U.S. Trustee with notice of the opening of such new Bank Accounts.

12.      The Debtors, the Banks, and all of the Debtors' creditors and other parties in interest shall comply with the terms of this Order.

13.     Except as otherwise provided in this Order or in a separate order of the Court, the Banks shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued prior to the Petition Date.

14.     In accordance with this Order and any other order of this Court, each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in the Motion is directed to honor checks presented for payment of obligations described in the Motion and all fund transfer requests made by the Debtors related thereto to the extent that sufficient funds are on deposit in such amounts.

15.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in respect of the unsecured claims that are dishonored or rejected.

16.     With respect to those Bank Accounts which are not located in Banks that are Authorized Depositories, the Debtors' shall have a 45-day extension (or such additional time to which the U.S. Trustee may agree) from the entry of this Order, without prejudicing the Debtors' ability to seek further extensions of the time period to either comply with section 345(b) of the Bankruptcy Code or to make other arrangements that are acceptable to the U.S. Trustee, and the Debtors are relieved from the obligations pursuant to section 345(b) of the Bankruptcy Code to obtain a bond from any entity for any of the other Bank Accounts.

17.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or

authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

18.     Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to the orders authorizing the use of cash collateral.

19.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

20.     Notice of the Motion as provided therein shall be deemed good and sufficient notice as such motion and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

21.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

22.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

23.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

24.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:
New York, New York

                                THE HONORABLE SEAN H. LANE
                                UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

## Proposed Final Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MSR RESORT GOLF COURSE LLC, *et al.*,[1] | ) Case No. 11-10372 (SHL) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## FINAL ORDER AUTHORIZING THE CONTINUED USE OF
## (A) EXISTING CASH MANAGEMENT SYSTEM, (B) EXISTING BANK ACCOUNTS,
## AND (C) EXISTING BUSINESS FORMS

Upon the motion (the "Motion")[2] of the Debtors, as debtors and debtors in possession (collectively, the "Debtors"), for the entry of an order (this "Order") authorizing the Debtors to (i) continue using their existing Cash Management System, (ii) continue to use, with the same account numbers, all of their Bank Accounts, (iii) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession, (iv) close any bank accounts and/or open new accounts in the Debtors' sole discretion, and (v) maintain existing business forms, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having found

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number include: MSR Resort Golf Course LLC (7388); MSR Biltmore Resort, LP (5736); MSR Claremont Resort, LP (5787); MSR Desert Resort, LP (5850); MSR Grand Wailea Resort, LP (5708); MSR Resort Ancillary Tenant, LLC (9698); MSR Resort Biltmore Real Estate, Inc. (8464); MSR Resort Desert Real Estate, Inc. (9265); MSR Resort Hotel, LP (5558); MSR Resort Intermediate Mezz GP, LLC (3864); MSR Resort Intermediate Mezz LLC (7342); MSR Resort Intermediate Mezz, LP (3865); MSR Resort Intermediate MREP, LLC (9703); MSR Resort Lodging Tenant, LLC (9699); MSR Resort REP, LLC (9708); MSR Resort Senior Mezz GP, LLC (9969); MSR Resort Senior Mezz LLC (7348); MSR Resort Senior Mezz, LP (9971); MSR Resort Senior MREP, LLC (9707); MSR Resort Silver Properties, LP (5674); MSR Resort SPE GP II LLC (5611); MSR Resort SPE GP LLC (7349); MSR Resort Sub Intermediate Mezz GP, LLC (1186); MSR Resort Sub Intermediate Mezz LLC (7341); MSR Resort Sub Intermediate Mezz, LP (1187); MSR Resort Sub Intermediate MREP, LLC (9701); MSR Resort Sub Senior Mezz GP, LLC (9966); MSR Resort Sub Senior Mezz LLC (7347); MSR Resort Sub Senior Mezz, LP (9968); and MSR Resort Sub Senior MREP, LLC (9705). The location of the debtors' service address is: c/o CNL-AB LLC, 1251 Avenue of the Americas, New York, New York 10020.

[2] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized, but not directed, to continue using the Cash Management System as described in the Motion and as permitted in the Cash Collateral Order.

3.      The Debtors are authorized to:  (a) continue to use, with the same account numbers, the Bank Accounts in existence on the Petition Date, including, without limitation, those accounts identified on **Exhibit C** attached to the Motion; (b) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (c) close any bank accounts and/or open new accounts in the Debtors' sole discretion; and (d) use, in their present form, all correspondence and business forms (including, without limitation, letterhead, purchase orders, and invoices), and other documents related to the Bank Accounts, without reference to their status as debtors in possession; *provided* that the Debtors will use their best reasonable efforts to

print "Debtor in Possession" on their Business Forms and checks; *provided further*, that the Debtors will replace their existing stock of Business Forms with new forms identifying their status as debtors in possession as existing forms are depleted.

4.      Except as otherwise expressly provided in this Order, the Banks are authorized and directed to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business, and to receive, process, honor, and pay any and all checks, drafts, wires, and automated clearing house transfers issued and drawn on the Bank Accounts before or after the Petition Date by the holders or makers thereof, as the case may be.

5.      The Banks are authorized and directed to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court on account of: (a) checks drawn on the Bank Accounts that are presented for payment at the Banks or exchanged for cashier's checks prior to or after the Petition Date; (b) checks or other items deposited in the Bank Accounts prior to or after to the Petition Date that have been dishonored or returned unpaid for any reason (including associated fees and costs), to the same extent the Debtors were responsible for such items prior to or after the Petition Date; and (c) undisputed, outstanding service charges owed to the Banks as of the Petition Date on account of the maintenance of the Cash Management System, if any.

6.      Notwithstanding any other provision of this Order, no Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake made despite

3

implementation of the protective measures outlined in the Motion, shall be deemed to be liable to the Debtors or their estates or otherwise in violation of this Order.

7. The Banks are authorized to charge, and the Debtors are authorized to pay, honor, or allow any Bank Fees or charges associated with the Bank Accounts, and charge back returned items to the Bank Accounts in the ordinary course.

8. The Banks are authorized and directed to pay obligations pursuant to this or any separate order of the Court.

9. The Debtors are authorized to close any existing Bank Accounts as they may deem necessary or appropriate in their sole discretion.

10. The Debtors are authorized to open any new Bank Account and all entities, including, without limitation, the Banks and credit card processors, are directed to comply with this Order to enable the Debtors to continue the use of their Cash Management System and any such new Bank Accounts; *provided* that if the Debtors open any new Bank Accounts, such new Bank Accounts will be opened at Banks that are Authorized Depositories and the Debtors shall provide the U.S. Trustee with notice of the opening of such new Bank Accounts.

11. The Debtors, the Banks, and all of the Debtors' creditors and other parties in interest shall comply with the terms of this Order.

12. Except as otherwise provided in this Order or in a separate order of the Court, the Banks shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued prior to the Petition Date.

13. In accordance with this Order and any other order of this Court, each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in the Motion is directed to honor checks presented for payment of

obligations described in the Motion and all fund transfer requests made by the Debtors related thereto to the extent that sufficient funds are on deposit in such amounts.

14.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in respect of the unsecured claims that are dishonored or rejected.

15.     The requirements of section 345(b) of the Bankruptcy Code are hereby waived as related to those Bank Accounts maintained at Banks which are not Authorized Depositories.

16.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

17.     Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to the orders authorizing the use of cash collateral.

18.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

19.     Notice of the Motion as provided therein shall be deemed good and sufficient notice as such motion and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

20. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

21. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

22. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

23. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:
New York, New York

THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT C**

## **Debtors' Bank Accounts**

# BANK ACCOUNTS[1]

## Cash Management Account

| Bank Name | Debtor Entity | Account Description | Last 4 Digits of Acct# | Contact Information |
|---|---|---|---|---|
| PNC Bank | All Mortgage Borrower Entities | Lender Controlled Cash Management Lockbox Account | 3505 | PNC Bank, N.A. Treasury Management Two PNC Plaza, 31st Floor 620 Liberty Avenue Pittsburgh, PA 15222 |

## Cash Management Sub-Accounts

| Bank Name | Debtor Entity | Account Description | Last 4 Digits of Sub-Acct # | Contact Information |
|---|---|---|---|---|
| PNC Bank | All Mortgage Borrowers | Sub-Account for Debt Service on Mortgage Loan | 5FR6 | PNC Bank, N.A. Treasury Management Two PNC Plaza, 31st Floor 620 Liberty Avenue Pittsburgh, PA 15222 |
| PNC Bank | All Mortgage Borrowers | Sub-Account for Debt Service on Sub Intermediate Mezzanine Loan | 6FS5 | PNC Bank, N.A. Treasury Management Two PNC Plaza, 31st Floor 620 Liberty Avenue Pittsburgh, PA 15222 |

---

[1] The Debtors reserve their right to amend the information included on this Exhibit including to add additional accounts to the extent inadvertently omitted herein.

| Bank Name | Debtor Entity | Account Description | Last 4 Digits of Sub-Acct # | Contact Information |
|---|---|---|---|---|
| PNC Bank | All Mortgage Borrowers | Tax Reserve Account | 5FR4 | PNC Bank, N.A.<br>Treasury Management<br>Two PNC Plaza, 31st Floor<br>620 Liberty Avenue<br>Pittsburgh, PA 15222 |
| PNC Bank | All Mortgage Borrowers | Insurance Reserve Account | 5FR5 | PNC Bank, N.A.<br>Treasury Management<br>Two PNC Plaza, 31st Floor<br>620 Liberty Avenue<br>Pittsburgh, PA 15222 |
| PNC Bank | All Mortgage Borrowers | Proceeds Reserve Account | 5FR9 | PNC Bank, N.A.<br>Treasury Management<br>Two PNC Plaza, 31st Floor<br>620 Liberty Avenue<br>Pittsburgh, PA 15222 |
| PNC Bank | All Mortgage Borrowers | Low DSCR Reserve Account | 5FR7 | PNC Bank, N.A.<br>Treasury Management<br>Two PNC Plaza, 31st Floor<br>620 Liberty Avenue<br>Pittsburgh, PA 15222 |
| PNC Bank | All Mortgage Borrowers | Grand Wailea Refund Reserve Account | 5FS1 | PNC Bank, N.A.<br>Treasury Management<br>Two PNC Plaza, 31st Floor<br>620 Liberty Avenue<br>Pittsburgh, PA 15222 |

## Property Level Accounts

| Bank Name | Debtor Entity | Account Description | Last 4 Digits of Acct# | Contact Information |
|---|---|---|---|---|
| Bank of America, N.A. | MSR Resort Lodging Tenant, LLC / MSR Resort Ancillary Tenant LLC | Resort Depository Account | 4538 | Jeannette R. Wortman<br>1655 Grant Street Building A<br>10th Floor<br>Concord, CA 94520-2445<br>Tel: 980-683-4220 |
| Bank of America, N.A. | MSR Resort Lodging Tenant, LLC / MSR Resort Ancillary Tenant LLC | Clubs Depository Lockbox | 4537 | Jeannette R. Wortman<br>1655 Grant Street Building A<br>10th Floor<br>Concord, CA 94520-2445<br>Tel: 980-683-4220 |
| Bank of America, N.A. | MSR Resort Lodging Tenant, LLC / MSR Resort Ancillary Tenant LLC | Credit Card Depository Account | 4539 | Jeannette R. Wortman<br>1655 Grant Street Building A<br>10th Floor<br>Concord, CA 94520-2445<br>Tel: 980-683-4220 |
| Bank of America, N.A. | MSR Resort Lodging Tenant, LLC / MSR Resort Ancillary Tenant LLC | Disbursement (Easements) Account | 1042 | Jeannette R. Wortman<br>1655 Grant Street Building A<br>10th Floor<br>Concord, CA 94520-2445<br>Tel: 980-683-4220 |
| Wells Fargo Wachovia Bank | MSR Resort Lodging Tenant, LLC / MSR Resort Ancillary Tenant LLC | Resort Disbursement Account | 2704 | John Kopp<br>550 South Tryon Street<br>7th Floor<br>Charlotte, NC 28202<br>Tel: 904-634-6366 |
| Bank of America, N.A. | MSR Desert Resort, LP | FF&E Reserve Account | 6842 | Cynthia Brown<br>101 S. Tryon Street<br>Charlotte, NC 28255<br>Tel: 888-715-1000<br>(Ext. 72185) |

| Bank Name | Debtor Entity | Account Description | Last 4 Digits of Acct# | Contact Information |
|---|---|---|---|---|
| Bank of America, N.A. | MSR Desert Resort, LP | Capital Expenditures Account | 2545 | Cynthia Brown<br>101 S. Tryon Street<br>Charlotte, NC 28255<br>Tel: 888-715-1000<br>(Ext. 72185) |
| Bank of America, N.A. | MSR Resort Golf Course LLC | Capital Expenditures Account | 5555 | Cynthia Brown<br>101 S. Tryon Street<br>Charlotte, NC 28255<br>Tel: 888-715-1000<br>(Ext. 72185) |
| Pacific Western Bank | MSR Resort Desert Real Estate, Inc. | Trust Account for Leasing | 5518 | Charlene McQueary<br>78-080 Calle Estado<br>Suite 101<br>La Quinta, CA 92253<br>Tel: 760-777-7447 |
| Pacific Western Bank | MSR Resort Desert Real Estate, Inc. | Operating Account for Real Estate / Leasing Business | 3337 | Charlene McQueary<br>78-080 Calle Estado<br>Suite 101<br>La Quinta, CA 92253<br>Tel: 760-777-7447 |
| Pacific Western Bank | MSR Resort Desert Real Estate, Inc. | Trust Account for Rental Pool Units | 3345 | Charlene McQueary<br>78-080 Calle Estado<br>Suite 101<br>La Quinta, CA 92253<br>Tel: 760-777-7447 |
| Pacific Western Bank | MSR Resort Desert Real Estate, Inc. | Leasing Account | 3353 | Charlene McQueary<br>78-080 Calle Estado<br>Suite 101<br>La Quinta, CA 92253<br>Tel: 760-777-7447 |

| Bank Name | Debtor Entity | Account Description | Last 4 Digits of Acct# | Contact Information |
|---|---|---|---|---|
| Wachovia | MSR Resort Lodging Tenant, LLC | Disbursement Account | 2717 | John Kopp<br>1525 W. WT Harris Blvd.<br>Charlotte, NC 28262<br>Tel: 904-634-6366 |
| Bank of America, N.A. | MSR Resort Lodging Tenant, LLC | Resort Depository Account | 7841 | Brent Bowman<br>1655 Grant Street Building A<br>10th Floor<br>Concord, CA 94520-2445<br>Tel: 980-683-4220 |
| Bank of America, N.A. | MSR Resort Lodging Tenant, LLC | Credit Card Depository Account | 7819 | Brent Bowman<br>1655 Grant Street Building A<br>10th Floor<br>Concord, CA 94520-2445<br>Tel: 980-683-4220 |
| Bank of America, N.A. | MSR Biltmore Resort, LP | FF&E Reserve Account | 6868 | Cynthia Brown<br>101 S. Tryon Street<br>Charlotte, NC 28255<br>Tel: 888-715-1000<br>(Ext. 72185) |
| Bank of America, N.A. | MSR Biltmore Resort, LP | Capital Expenditures Account | 5571 | Cynthia Brown<br>101 S. Tryon Street<br>Charlotte, NC 28255<br>Tel: 888-715-1000<br>(Ext. 72185) |
| Wachovia | MSR Resort Biltmore Real Estate, Inc. | Operating Account for Real Estate Brokerage Business | 2037 | John Kopp<br>1525 W. WT Harris Blvd.<br>Charlotte, NC 28262<br>Tel: 904-634-6366 |

| Bank Name | Debtor Entity | Account Description | Last 4 Digits of Acct# | Contact Information |
|---|---|---|---|---|
| Wachovia | MSR Resort Lodging Tenant, LLC | Disbursement Account | 2694 | John Kopp<br>1525 W. WT Harris Blvd.<br>Charlotte, NC 28262<br>Tel: 904-634-6366 |
| Bank of Hawaii | MSR Resort Lodging Tenant, LLC | Depository Account | 8266 | John McKenna<br>1279 S. Kihei Road<br>Kihei, HI 96753<br>Tel: 808-537-8560 |
| Bank of Hawaii | MSR Resort Lodging Tenant, LLC | Cash Concentration Account | 7065 | John McKenna<br>1279 S. Kihei Road<br>Kihei, HI 96753<br>Tel: 808-537-8560 |
| Bank of Hawaii | MSR Resort Lodging Tenant, LLC | Membership Depository Account | 7312 | John McKenna<br>1279 S. Kihei Road<br>Kihei, HI 96753<br>Tel: 808-537-8560 |
| Bank of Hawaii | MSR Resort Lodging Tenant, LLC | Credit Card Depository Account | 8215 | John McKenna<br>1279 S. Kihei Road<br>Kihei, HI 96753<br>Tel: 808-537-8560 |
| Bank of Hawaii | MSR Resort Lodging Tenant, LLC | Vendor Escrow Account | 5514 | John McKenna<br>1279 S. Kihei Road<br>Kihei, HI 96753<br>Tel: 808-537-8560 |

| Bank Name | Debtor Entity | Account Description | Last 4 Digits of Acct# | Contact Information |
|---|---|---|---|---|
| Bank of America, N.A. | MSR Grand Wailea Resort, LP | FF&E Reserve Account | 6839 | Cynthia Brown<br>101 S. Tryon Street<br>Charlotte, NC 28255<br>Tel: 888-715-1000<br>(Ext. 72185) |
| Bank of America, N.A. | MSR Grand Wailea Resort, LP | Capital Expenditures Account | 5568 | Cynthia Brown<br>101 S. Tryon Street<br>Charlotte, NC 28255<br>Tel: 888-715-1000<br>(Ext. 72185) |
| Bank of America, N.A. | MSR Resort Lodging Tenant, LLC | Credit Card Depository Account | 5308 | Cynthia Brown<br>101 S. Tryon Street<br>Charlotte, NC 28255<br>Tel: 888-715-1000<br>(Ext. 72185) |
| Bank of America, N.A. | MSR Resort Lodging Tenant, LLC | Hotel Depository Account | 5309 | Cynthia Brown<br>101 S. Tryon Street<br>Charlotte, NC 28255<br>Tel: 888-715-1000<br>(Ext. 72185) |
| Bank of America, N.A. | MSR Resort Lodging Tenant, LLC | Member Depository Account | 5311 | Cynthia Brown<br>101 S. Tryon Street<br>Charlotte, NC 28255<br>Tel: 888-715-1000<br>(Ext. 72185) |
| Bank of America, N.A. | MSR Resort Lodging Tenant, LLC | Controlled Disbursement Account | 0140 | Cynthia Brown<br>101 S. Tryon Street<br>Charlotte, NC 28255<br>Tel: 888-715-1000<br>(Ext. 72185) |

| Bank Name | Debtor Entity | Account Description | Last 4 Digits of Acct# | Contact Information |
|---|---|---|---|---|
| Bank of America, N.A. | MSR Resort Lodging Tenant, LLC | Payroll Account | 5191 | Cynthia Brown 101 S. Tryon Street Charlotte, NC 28255 Tel: 888-715-1000 (Ext. 72185) |
| Bank of America, N.A. | MSR Claremont Resort, L.P. | FF&E Reserve Account | 6172 | Cynthia Brown 101 S. Tryon Street Charlotte, NC 28255 Tel: 888-715-1000 (Ext. 72185) |
| Bank of America, N.A. | MSR Claremont Resort, L.P. | Capital Expenditures Account | 5607 | Cynthia Brown 101 S. Tryon Street Charlotte, NC 28255 Tel: 888-715-1000 (Ext. 72185) |
| Bank of America, N.A. | MSR Resort Lodging Tenant, LLC | Main Operating Account | 2326 | Chrystal L. Castiglione 101 S. Tryon Street Charlotte, NC 28255 Tel: 888-715-1000 |
| Bank of America, N.A. | MSR Resort Hotel, L.P. | FF&E Reserve Account | 6185 | Cynthia Brown 101 S. Tryon Street Charlotte, NC 28255 Tel: 888-715-1000 (Ext. 72185) |
| Bank of America, N.A. | MSR Resort Hotel, L.P. | Capital Expenditures Account | 5584 | Cynthia Brown 101 S. Tryon Street Charlotte, NC 28255 Tel: 888-715-1000 (Ext. 72185) |

# EXHIBIT D

**Diagram of Debtors' Cash Management System**

**Flow of Funds - 5-Pack Portfolio**



1 - For properties subject to operating leases, distributions are accounted for as rent paid under the lease agreements

**(A)** - Calculation of Excess Cash for Distribution is prepared and submitted by each property 2 - 3 business days prior to the 30th day of the calendar month. The calculation is reviewed and adjusted, as necessary, prior to initiation of the wire from the hotel manager to the lender-controlled lockbox account.

**(B)** - Debt service, Special Servicing Fee of 25 bps (calculated on the $1BN Senior Mortgage) and servicer fees of $8k, is paid from the cash management lockbox held at PNC Bank. Transfers are made from the main cash management lockbox to subaccounts based on priorities outlined in the loan agreement. Any shortfall is funded by the Owner.

**(C)** - Because the portfolio is currently in a Low DSCR Period, 80% of any excess cash in the lender-controlled lockbox after debt service is deposited in the Low DSCR Reserve Account. The funds are available to fund any debt service shortfall due on the mortgage loan. If used to fund debt service, the Low DSCR Reserve Account funds are to be replenished before payments are made to the mezzanine lenders. The remaining 20% of excess cash is deposited in the MS Resort Purchaser lockbox held at JPMorgan.