James H.M. Sprayregen, P.C.
Paul M. Basta
Edward O. Sassower
Chad J. Husnick
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MSR RESORT GOLF COURSE LLC, *et al.*,[1] | ) | Case No. 11-10372 (SHL) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF SAUL BURIAN IN SUPPORT OF THE DEBTORS'
REVISED PROPOSED FORM OF FOURTH INTERIM CASH COLLATERAL ORDER**

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number include:  MSR Resort Golf Course LLC (7388); MSR Biltmore Resort, LP (5736); MSR Claremont Resort, LP (5787); MSR Desert Resort, LP (5850); MSR Grand Wailea Resort, LP (5708); MSR Resort Ancillary Tenant, LLC (9698); MSR Resort Biltmore Real Estate, Inc. (8464); MSR Resort Desert Real Estate, Inc. (9265); MSR Resort Hotel, LP (5558); MSR Resort Intermediate Mezz GP, LLC (3864); MSR Resort Intermediate Mezz LLC (7342); MSR Resort Intermediate Mezz, LP (3865); MSR Resort Intermediate MREP, LLC (9703); MSR Resort Lodging Tenant, LLC (9699); MSR Resort REP, LLC (9708); MSR Resort Senior Mezz GP, LLC (9969); MSR Resort Senior Mezz LLC (7348); MSR Resort Senior Mezz, LP (9971); MSR Resort Senior MREP, LLC (9707); MSR Resort Silver Properties, LP (5674); MSR Resort SPE GP II LLC (5611); MSR Resort SPE GP LLC (7349); MSR Resort Sub Intermediate Mezz GP, LLC (1186); MSR Resort Sub Intermediate Mezz LLC (7341); MSR Resort Sub Intermediate Mezz, LP (1187); MSR Resort Sub Intermediate MREP, LLC (9701); MSR Resort Sub Senior Mezz GP, LLC (9966); MSR Resort Sub Senior Mezz LLC (7347); MSR Resort Sub Senior Mezz, LP (9968); and MSR Resort Sub Senior MREP, LLC (9705). The location of the debtors' service address is:  c/o CNL-AB LLC, 1251 Avenue of the Americas, New York, New York 10020.

I, Saul Burian, declare as follows:

1.  I am a Managing Director of Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), a financial advisory and investment banking firm with offices around the world and proposed financial advisor and investment banker to the above-captions debtors and debtors in possession (collectively, the "Debtors"). I submit this declaration (this "Declaration") in support of the *Revised Proposed Form of Fourth Interim Cash Collateral Order* [Docket No. 126] (the "Fourth Interim Order"), the *Debtors' Reply to Limited Objection of Midland Loans Services, Inc. to Debtors' Proposed Fourth Interim Cash Collateral Order* (the "Midland Reply"), filed contemporaneously herewith, and the *Debtors' Reply to Limited Response of PGA West Members Association to the Debtors' (I) Proposed Interim Order Authorizing Use of Cash Collateral Sale [Doc No. 106] and (II) Postpetition Financing Motion [Doc. No. 107]* (the "PGA West Reply"), filed contemporaneously herewith.[2]

2.  Except where specifically noted, the statements in this Declaration are based on either my personal knowledge, information supplied or verified by the Houlihan Lokey financial team that I supervise or the Debtors' personnel and third-party advisors, my review of relevant documents, or my opinion based upon my experience and knowledge of the Debtors' operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Declaration on behalf of the Debtors.

## Qualifications

3.  Houlihan Lokey is a financial advisory and investment banking firm with its principal office located at 1930 Century Park West, Los Angeles, CA 90067. Houlihan Lokey is a registered broker-dealer with the United States Securities and Exchange Commission and is a

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Midland Reply.

member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation. Houlihan Lokey was founded in 1970 and, together with its subsidiaries, has approximately 800 employees located in 14 offices worldwide. Houlihan Lokey has one of the largest worldwide financial restructuring practices of any investment bank. Houlihan Lokey's Financial Restructuring Group, which has more than 100 professionals, is one of the leading advisors and investment bankers to debtors, secured and unsecured creditors, acquirers, and other parties-in-interest involved in financially troubled companies both in and outside of bankruptcy. In particular, Houlihan Lokey has extensive experience in providing advisory services to debtors and creditors in complex real estate related restructurings.

4. I specialize in advising both debtors and creditors in financial restructurings and distressed mergers and acquisitions; raising capital for troubled businesses; and representing debtors and creditor constituencies in bankruptcy proceedings. Before joining Houlihan Lokey, I was a partner in the New York law firm Kramer Levin Naftalis & Frankel, where I specialized in corporate reorganizations and bankruptcy. I am a national director of the Turnaround Management Association, and I lecture frequently for, *inter alia*, the American Bankruptcy Institute, the National Conference of Bankruptcy Judges, and the Turnaround Management Association. I received my B.A. in economics at Yeshiva University and my J.D. from Columbia University School of Law.

### Information To Be Provided By The Debtors

5. Since filing for bankruptcy on February 1, 2011, the Debtors have been involved in extensive negotiations with Midland Loan Services, Inc., the special servicer under the Debtors' $1 billion mortgage loan, regarding an agreed-upon proposed order that would provide for the uninterrupted consensual use of cash collateral. After six weeks of discussions, the Debtors and Midland have nearly agreed upon an order that both Midland and the Debtors

believe provides "adequate protection" to the Prepetition Secured Parties. The only remaining issue relates to Midland's ability to disclose to other parties the information that the Debtors have agreed to provide to Midland under paragraph 6(d) of the Fourth Interim Order. The Reporting Information is extremely sensitive, confidential, and proprietary in nature. Indeed, the Reporting Information is significantly detailed and discloses sensitive pricing strategies, budget information, and expense data. Among other things, a competitor with an unfettered ability to use the Reporting Information could undercut the Debtors' prices or otherwise alter the competitor's pricing strategies, adjust expense budgets, match capital expenditure projects, and otherwise exploit the Reporting Information to gain a competitive advantage over the Debtors.

6. Among other things, the Reporting Information includes the Debtors' agreement to provide "PACE reports," "STAR reports," and a 13-week cash flow and accrual budget (both in the aggregate and on a property-by-property basis). PACE reports provide detailed information on forecasted revenue, average daily rate and occupancy, and compare the forecasts to the same period of the prior year. These PACE reports depict, on a monthly basis, the number of rooms currently booked for the remainder of the year and next year, as well as budgeted and actual average room rates for all of the relevant months. "STAR reports" (Smith Travel Accommodation Report) provide information on a property's occupancy, average daily rate, and RevPAR (revenue per available room) performance, as benchmarked against its competition. STAR Reports can help identify whether a property is gaining or losing market share and allow management to make necessary corrections to its revenue management, marketing, and sales strategies. Smith Travel Research compiles these operating statistics versus a composite of the hotel's "competitive set" on a monthly basis. The "competitive set" is compiled only on an aggregate basis, so a hotel cannot determine the operating statistics for an individual competitor.

7. Together, these documents will be prepared on a monthly basis and contain details regarding budgets, pricing, occupancy, expenses, and the Resorts' current and future bookings. The Reporting Information will include both aggregate information, as well as property-level specific information for each resort. It is unquestionable that certain portions of the Reporting Information consist of financial data and statistics that are commercially sensitive and/or proprietary in nature. In the hospitality industry, this information is not commonly made available to the public because disclosure to the public would competitively disadvantage any hotel's operations.

8. In the Limited Objection, Midland asserts that under certain agreements to which it is a party, it must disclose the Reporting Information to a number of entities, including its Operating Advisor and the Certificate Holders. Certain of these parties are actual competitors of the Debtors. For example, the Operating Advisor is an affiliate of KSL, which owns and operates the Rancho Las Palmas Resort & Spa in the Palm Springs, California area. This resort is a direct competitor of the Debtors' La Quinta Resort & Club and PGA West. In fact, the Las Palmas and the La Quinta only are located approximately ten miles from each other and compete fiercely against each other for the same customers and revenue dollars. KSL also owns and/or manages a significant number of other luxury resort properties throughout the United States. Moreover, due to the number of Certificate Holders, the transferability of such certificates, and resort ownership changes in the broader market, the universe of parties that Midland seeks to disclose the Reporting Information to during the chapter 11 cases may contain a large number of additional present or future competitors.

9. Permitting Midland to disclose the Reporting Information to KSL and other competitors without restrictions could have a severely negative impact on the Debtors' operation

of their resorts and, consequently, the value of the Debtors' estates. For example, a competitor with the Reporting Information could compare details of their own operations with the Debtors and undercut the resorts' rates to lure business away from the Debtors' resorts, especially in the extremely competitive group sales business. Parties also could use the Reporting Information to adjust their occupancy or capital expenditure strategies to better match those of the Debtors. The taking of such actions by third parties would reduce the Debtors' competitive advantages (that they have expended significant efforts to develop and maintain) and would diminish the profitability of the Debtors' businesses to the detriment of the Debtors' estates.

10. Accordingly, the Debtors have agreed to go above and beyond their prepetition reporting obligations under the loan documents and provide to Midland and other parties certain statistics and data that is more granular, extensive, and burdensome than that provided for under the prepetition loan documents. For example, the Fourth Interim Order requires: (a) monthly updates of a 13-week cash flow and accrual budget, which require Midland's consent every month and were not required under the prepetition loan documents, (b) certain covenant testing provisions; and (c) explanations on a monthly basis of variances over 5% for items in the 13-week cash flow and accrual budgets. None of these requirements were contained in the prepetition loan documents.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: March 14, 2011                              Respectfully submitted,

                                                   */s/ Saul Burian*
                                                   Saul Burian
                                                   Managing Director
                                                   Houlihan Lokey Capital, Inc.