James H.M. Sprayregen, P.C.
Paul M. Basta
Edward O. Sassower
Chad J. Husnick
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

*Counsel to the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MSR RESORT GOLF COURSE LLC, *et al.*,[1] | ) | Case No. 11-10372 (SHL) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' REPLY TO LIMITED RESPONSE OF PGA WEST
MEMBERS ASSOCIATION TO THE DEBTORS' (I) PROPOSED INTERIM ORDER
AUTHORIZING USE OF CASH COLLATERAL SALE [DOC NO. 106] AND
(II) POSTPETITION FINANCING MOTION [DOC. NO. 107]**

---

[1]  The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number include:  MSR Resort Golf Course LLC (7388); MSR Biltmore Resort, LP (5736); MSR Claremont Resort, LP (5787); MSR Desert Resort, LP (5850); MSR Grand Wailea Resort, LP (5708); MSR Resort Ancillary Tenant, LLC (9698); MSR Resort Biltmore Real Estate, Inc. (8464); MSR Resort Desert Real Estate, Inc. (9265); MSR Resort Hotel, LP (5558); MSR Resort Intermediate Mezz GP, LLC (3864); MSR Resort Intermediate Mezz LLC (7342); MSR Resort Intermediate Mezz, LP (3865); MSR Resort Intermediate MREP, LLC (9703); MSR Resort Lodging Tenant, LLC (9699); MSR Resort REP, LLC (9708); MSR Resort Senior Mezz GP, LLC (9969); MSR Resort Senior Mezz LLC (7348); MSR Resort Senior Mezz, LP (9971); MSR Resort Senior MREP, LLC (9707); MSR Resort Silver Properties, LP (5674); MSR Resort SPE GP II LLC (5611); MSR Resort SPE GP LLC (7349); MSR Resort Sub Intermediate Mezz GP, LLC (1186); MSR Resort Sub Intermediate Mezz LLC (7341); MSR Resort Sub Intermediate Mezz, LP (1187); MSR Resort Sub Intermediate MREP, LLC (9701); MSR Resort Sub Senior Mezz GP, LLC (9966); MSR Resort Sub Senior Mezz LLC (7347); MSR Resort Sub Senior Mezz, LP (9968); and MSR Resort Sub Senior MREP, LLC (9705). The location of the debtors' service address is:  c/o CNL-AB LLC, 1251 Avenue of the Americas, New York, New York 10020.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this reply (this "Reply") to the *Limited Response of PGA West Members Association to the Debtors' (I) Proposed Interim Order Authorizing Use of Cash Collateral Sale [Doc No. 106] and (II) Postpetition Financing Motion [Doc. No. 107]* [Docket No. 114] (the "Limited Response").[2] In support of this Reply, the Debtors respectfully state as follows.[3]

**Preliminary Statement**

The Debtors' share the PGA West Members Association's (the "Association") interest in the continued viability of La Quinta. While the Debtors appreciate the Association's interest in the information (the "Reporting Information") that is to be provided to the DIP Lenders and the Prepetition Secured Parties (collectively, the "Lenders"), (a) the Reporting Information is extremely sensitive, confidential, and proprietary in nature; (b) providing the Reporting Information to the Association risks its dissemination, which would negatively impact on the Debtors' business operations and their ability to reorganize under these chapter 11 cases; and (c) a recent arbitration ruling found that the Association was not entitled to information that was even less detailed and sensitive than the Reporting Information that the Association requests now. Notwithstanding that the Debtors cannot share the Reporting Information with the Association, the Debtors have engaged in and remain willing to continue to engage in open dialogue with the Association.

---

[2] Capitalized terms used and otherwise defined herein shall have the meanings set forth in the Limited Response.

[3] Issues related to this Reply also appear in the pleadings related to the *Limited Objection of Midland Loan Services, Inc. to Debtors' Proposed Fourth Interim Cash Collateral Order* [Docket No. 124]. Accordingly, facts and circumstances supporting this Reply are set forth in, and hereby incorporated by reference to, the *Declaration of Saul Burian in Support of the Debtors' Revised Proposed Form of Fourth Interim Cash Collateral Order* [Docket No. 128] (the "Burian Declaration").

**Reply**

1.  The Reporting Information is confidential, sensitive, and proprietary in nature. The Reporting Information is significantly detailed and discloses sensitive pricing strategies, budget information, and expense data.

2.  The Debtors have agreed to provide the Reporting Information to the Lenders only in order to secure continued use of cash collateral and to secure debtor-in-possession financing during these chapter 11 cases (collectively, the "Case Funding"). Moreover, the Debtors are proposing to provide the Reporting Information to the Lenders only pursuant to extensively-negotiated confidentiality agreements.[4] Forcing the Debtors to share the Reporting Information with the Association only would jeopardize the Debtors' efforts to date to ensure that the Reporting Information remains strictly confidential.

3.  The Debtors are not contractually obligated to share the Reporting Information with the Association. As indicated above, this is not the Association's first attempt to secure financial information on the La Quinta. In fact, the issue recently was arbitrated, and the arbitration determined that the members were not entitled to PGA West financial information.[5] The Association recognized the results of the arbitration in its message to members:

> The arbitration hearings were held on July 21, 22, and 23 at the La Quinta Resort. The arbitration panel, consisting of three CPAs expert in country club accounting, after deliberating for 30-days made the following award;

---

[4] In fact, certain aspects of the Reporting Information are so commercially sensitive that the Fourth Interim Order (as defined herein) requires that competitors of the Debtors not receive such information, even upon execution of a confidentiality agreement (*e.g.*, the PACE reports (as discussed in the Burian Declaration), which the Fourth Interim Order requires that competitors of the Debtors receive only a redacted version, even if they do agree to execute a confidentiality agreement). *See Notice of Filing of Revised Proposed Form of Fourth Interim Cash Collateral Order* [Docket No. 126] (the "Fourth Interim Order"), ¶ 6(d)(xiv)(A).

[5] Beginning in 2008, the PGA West Advisory Board of Governors requested access to, among other things, PGA West financial statements. PGA West ownership denied the request because the membership plan did not provide for rights related to financial information. The Association sought arbitration in the American Arbitration Association, and following hearings held from July 21-23, 2009, PGA West ownership prevailed.

> Declaration 1: The Advisory Board of Governors (Claimant), on behalf of the members of PGA West is not entitled to view the balance sheet of the entity that holds the membership deposits and the assets of PGA West.
>
> . . .
>
> Declaration 3: The Claimant is not entitled to have access to financial information regarding the operation of PGA West.

*Arbitration Ruling*, Sept. 2, 2009 e-mail notice from PGA West Advisory Board of Governors, attached hereto as <u>Exhibit A</u>. Furthermore, the Reporting Information is more sensitive and proprietary than the information sought by the Association through the arbitration, and the Association's Limited Response constitutes an inappropriate attempt to undermine the disposition of the arbitration; given the steps the Debtors have taken to ensure their continued viability on an ongoing basis, the result of the arbitration should be upheld here.[6]

    4.     The Debtors—acting pursuant to their fiduciary duty to preserve and maximize value of the Debtors' estates—already have taken a number of key steps in these chapter 11 cases to protect the Association's interests (*e.g.*, the Debtors' proposed Case Funding and certain first-day relief obtained, including authority to continue honoring membership obligations). In addition, the Debtors have been working closely with the Association during these chapter 11 cases in an attempt to minimize the effect (if any) that these chapter 11 cases may have on the Association's constituencies. And, notwithstanding that the Debtors cannot agree to share the Reporting Information with the Association, the Debtors remain willing to continue to engage in open dialogue with the Association. Providing the Reporting Information to the Association will not further the maximization of value to the Debtors' estates, but, instead, only will risk that such

---

[6] *See Bear, Stearns & Co., Inc., Bear, Stearns Sec. Corp. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005) ("An arbitration decision may effect collateral estoppel in a later litigation or arbitration if the proponent can show with clarity and certainty that the same issues were resolved."); *In re S.W. Bach & Co.*, 425 B.R. 78, 102 (Bankr. S.D.N.Y. 2010) ("whether a court applies collateral estoppel regarding an arbitration decision is within the Court's broad discretion").

K&E 18549039

Reporting Information is used in an inappropriate manner or distributed to the Debtors' competitors or other parties potentially adversarial to the Debtors.[7] For example, a competitor with the Reporting Information could compare details of their own operations with the Debtors and undercut the resorts' rates to lure business away from the Debtors' resorts, especially in the extremely competitive group sales business. Parties also could use the Reporting Information to adjust their occupancy or capital expenditure strategies to better match those of the Debtors. The taking of such actions by third parties would reduce the Debtors' competitive advantages (that they have expended significant efforts to develop and maintain) and would diminish the profitability of the Debtors' businesses to the detriment of the Debtors' estates. In addition, members of the Association are customers of the resorts and golf clubs, and providing the Reporting Information to them could hinder management's ability to effectively maximize the resort's and club's revenues and profitability. Accordingly, it is imperative that the Debtors' limit the dissemination of the Reporting Information to the greatest extent possible.

5. In short, the Association is not contractually or otherwise entitled to the Reporting Information, and providing the Reporting Information will not advance—and, in fact, may jeopardize—the Debtors' goal of successfully reorganizing the Debtors' estates and maximizing value for their constituents.[8]

*[Remainder of Page Intentionally Left Blank]*

---

[7] The Debtors' concern that the Information may reach unintended parties arises in part because the Association has not provided sufficient detail describing its composition and relationship to these chapter 11 cases. To date, the Association has not explained which members are represented in these proceedings, the nature of such representation, the terms of any engagement letter, or the Association's potential intended use and/or distribution of the Information.

[8] If in the future the Debtors contemplate a course of action that will affect the Association, the Debtors will ensure at that time that the Association has the information necessary to fully consider the situation.

WHEREFORE, for the reasons above, the Debtors respectfully request that the Court deny the Association's request for the Reporting Information as set forth in the Limited Response.

| | |
|---|---|
| Dated: March 14, 2011<br>New York, New York | */s/ Paul M. Basta*<br>James H.M. Sprayregen, P.C.<br>Paul M. Basta<br>Edward O. Sassower<br>Chad J. Husnick<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br><br>*Counsel to the Debtors and Debtors in Possession* |

K&E 18549039

**Exhibit A**

From: "Advisory Board of Governors (ABG)"
Date: Wed, 2 Sep 2009 18:45:54 -0400 (EDT)
Subject: Arbitration Ruling

Fellow PGA West Members;

As reported to you on several occasions during the past two years the Advisory Board of Governors (ABG) and the PGA West Member Association (PGAWMA) have made repeated attempts to obtain copies of the PGA WEST balance sheet and financial statements from ownership and management. Outside counsel and an accounting firm, specializing in country club operations, were both of the opinion that the ABG was entitled to this information and that the information was necessary for the ABG to fulfill its fiduciary responsibility to the membership.

After exhausting all avenues of negotiation over the past several years, arbitrating the disputes was recommended by our law firm and was the only course of action available to the Boards in order to determine the holder of the membership's initiation deposits and to obtain financial information which would enable the Boards to meaningfully respond to future proposed dues increases. The Club Usage Agreement (CUA) and the Premier Membership Plan (PMP) both provide the right and responsibility to the ABG to arbitrate disputes with club ownership in order to protect the memberships.

The arbitration hearings were held on July 21, 22, and 23 at the La Quinta Resort. The arbitration panel, consisting of three CPAs expert in country club accounting, after deliberating for 30-days made the following award;

Declaration 1: The Advisory Board of Governors (Claimant), on behalf of the members of PGA West is not entitled to view the balance sheet of the entity that holds the membership deposits and the assets of PGA West.

Declaration 2: There is no dispute by either party that Article 14 of the Club Usage Agreement dated, August 12. 1993 still applies.

Declaration 3: The Claimant is not entitled to have access to financial information regarding the operation of PGA West.

These rulings are binding and we have no right to any supporting explanation.

The final step in this matter is the award of costs, expenses and reasonable attorney's fees. We anticipate the announcement of this award to be made by the end of September. The Premier Membership Plan stipulates the financial award to be proportionately added to the dues of the members.

While this outcome is terribly disappointing and unsatisfying, the board will continue to work to protect the rights and privileges of the membership.

The Advisory Board of Governors

Forward email

This email was sent to mwiles@thewilesgroup.com by drshoffstall@yahoo.com.
Update Profile/Email Address | Instant removal with SafeUnsubscribe™ | Privacy Policy.
PGAWMA | 80 970 Spanish Bay | La Quinta | CA | 92253

Email Marketing by

K&E 18549039