DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Michael J. Sage
Kevin J. O'Brien
Brian E. Greer
Jason O. Billy
Nicole B. Herther-Spiro
Scott C. Kessenick

*Attorneys for 450 Lex Private Limited and
C Hotel Mezz Private Limited*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                          :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MSR RESORT GOLF COURSE LLC, *et al.* | : | Case No. 11-10372 (SHL) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

------------------------------------------------------------ X

**450 LEX PRIVATE LIMITED'S AND C HOTEL MEZZ PRIVATE LIMITED'S
REQUEST FOR THE PRODUCTION OF DOCUMENTS CONCERNING DEBTORS'
MOTION FOR AN EXTENSION OF THE EXCLUSIVITY PERIOD**

      450 Lex Private Limited and C Hotel Mezz Private Limited (together, "GIC RE"), by and through their undersigned attorneys Dechert LLP, hereby serve their Request for Production of Documents Concerning Debtors' Motion for an Extension of the Exclusivity Period to the above-captioned debtors and debtors in possession (hereafter, "Debtors" or the "Company"), pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, which are made applicable to this contested matter by Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure. GIC RE hereby requests that the Debtors serve any objections and written responses to each request that follows and produce the requested documents for inspection and copying at the offices of

16677919                                               1

Dechert LLP, 1095 Avenue of the Americas, New York, NY 10036 on or before September 9, 2011, unless the parties agree or the Court orders production to occur on another date.

## DEFINITIONS

For the purpose of the requests set forth below, the uniform definitions and rules of construction set forth in Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, made applicable to this proceeding pursuant to Rule 7026-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court of the Southern District of New York, together with the following definitions and instructions, shall apply:

1. "<u>6/28/2011 Hrg. Tr.</u>" shall mean the transcript of Court proceedings in the above-captioned matter on June 28, 2011.

2. "<u>Burian Deposition</u>" shall mean the transcript of the deposition of Saul Burian in the above-captioned matter on June 10, 2011.

3. "<u>Clubs</u>" shall mean, collectively and individually, the Citrus Club and the Club at PGA West operated at La Quinta Resort & Club.

4. "<u>Communication</u>" shall mean any transmission or exchange of thoughts, ideas, data, messages, inquiries or information of any kind between or among any two or more persons, including without limitation, between or among employees or agents of a person other than a natural person, whether such transmissions or exchanges are oral or written and whether they are personally, electronically or otherwise generated, transcribed, transmitted or recorded.

5. "<u>Debtors</u>" shall mean the debtors and debtors in possession in these chapter 11 cases, their corporate parents, subsidiaries and affiliates, and any of their officers, directors, employees, partners, attorneys, representatives and agents.

6. "<u>Document</u>" shall mean any writing, note, electronic mail, drawing, graph, chart, photograph, phono-record, movie or other graphic or other recorded matter, whether handwritten, computer-generated, stenographic, typewritten, printed, on microfilm, or electronically, mechanically or photographically recorded or reproduced, and any other tangible things or data compilation from which information can be obtained, processed, transcribed or retrieved, including, without limitation, data processing cards, computer tapes, computer disks and computerized databases, whether originals, copies, or drafts, including, without limitation, non-identical copies, however produced or reproduced. A document with handwritten, typewritten or other recorded notes is not and shall not be deemed identical to one without such modifications, additions or deletions. An electronic mail with a prior or forwarding history shall

not be deemed identical to one without such prior or forwarding history. In addition to final versions, "document(s)" includes drafts, preliminary drafts, and annotated, marked-up, rough or unedited versions or copies of any document as defined herein.

7. "GIC RE" shall mean 450 Lex Private Limited and C Hotel Mezz Private Limited, their corporate parents, subsidiaries and affiliates, and any of their officers, directors, employees, partners, attorneys, representatives and agents.

8. "GIC RE Offer" shall mean the offer made by GIC RE to purchase the Debtors' assets for a cash purchase price of $1,115,000,000 plus a credit bid of $360,000,000, as set forth in the February 9, 2011 letter from Michael J. Sage to James H.M. Sprayregen.

9. "Membership Agreements" shall mean, collectively and singularly, the agreements governing membership in the Citrus Club and The Club at PGA West.

10. "Resorts" shall mean, collectively and individually, the Doral Golf Resort & Spa (the "Doral"), the Arizona Biltmore Resort & Spa, Grand Wailea Resort Hotel & Spa, La Quinta Resort & Club, and the Clairmont Hotel & Spa.

11. "Second Motion to Extend" shall mean the Motion of MSR Resort Golf Course LLC, *et al.*, for Entry of An Order Further Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof, served by Debtors on September 2, 2011.

12. "Supplemental Burian Declaration" shall mean the Supplemental Declaration of Saul Burian in Support of the Motion of MSR Resort Golf Course LLC, *et al.*, for Entry of an Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof, dated June 24, 2011.

13. "Warnick" shall mean Warnick & Company, its corporate parents, subsidiaries and affiliates, and any of their officers, directors, employees, partners, attorneys, representatives and agents.

14. A document, communication, or allegation "concerning" or "regarding" a subject matter is one constituting, comprising, identifying, referring to, relating to, dealing with, containing, embodying, reflecting, stating, commenting on, describing, responding to, analyzing or pertaining to the matter in any way.

15. As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of these requests any document that might be deemed outside its scope by another construction.

16. The words "any" and "all" shall be used interchangeably to bring within the scope of these requests of these requests any document that might be deemed outside its scope by another construction.

17. All capitalized terms used herein and not defined herein or in the First Request shall have the meaning assigned them in the Supplemental Burian Declaration.

# **INSTRUCTIONS**

1.	The requests set forth below apply to all documents in the Debtors' possession, custody, or control, and includes documents, wherever located, within the possession, custody or control of the Debtors' advisors, affiliates, agents, attorneys, accountants, consultants, employees, experts, representatives, and other persons acting or who have acted on behalf of the foregoing entities or individuals referenced in this instruction.

2.	These requests require the Debtors to produce all responsive documents and things in their possession, custody, or control, without regard to the physical location of such documents and things.  The Debtors have the duty to search for responsive documents and things in all media and sources in its possession, custody, or control where paper or electronic files are kept or stored, including floppy disks, hard drives on or for personal computers, computer servers, mainframe storage tapes or disks, archive facilities and backup facilities.  The Debtors have the duty to ensure that no responsive documents or things are destroyed, deleted or otherwise disposed of.

3.	In accordance with Rule 26(e) of the Federal Rules of Civil Procedure, each request for the production of documents and things shall be deemed continuing so as to require prompt supplemental responses if additional responsive documents and things are obtained or discovered between the time of responding to these requests and the time of trial.

4.	In accordance with Rule 34(b) of the Federal Rules of Civil Procedure, documents shall be produced as they have been kept in the ordinary course of business or shall be organized and labeled to correspond with the requests to which the documents are responsive.  If there are no documents responsive to a request herein, the response to such request shall so state.

5.	Each page of all documents and all things produced in response to these requests shall be marked by a unique Bates number to allow for accurate identification.

6.	The parties shall confer concerning the form in which electronic documents shall be produced.

7.	Any document request propounded in the present tense shall also be read as propounded in the past tense and vice versa.

8.	The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, whichever is appropriate so as to bring within the scope of these requests any information or documents which might otherwise be considered to be beyond their scope.

9.	In connection with any objection or request for relief with respect to the document requests herein, Debtors shall (i) simultaneously file a copy of the document request or answer, and (ii) specify and quote verbatim each relevant document request or answer, and immediately following each specification, set forth the basis of the objection or relief requested.  Any such objection or request for relief shall state all grounds with specificity.  Any ground not stated in such objection or request for relief within the time provided by the Federal Rules of Civil Procedure shall be deemed waived.

10. If any documents are withheld from production on the alleged grounds of privilege or immunity (whether under common law, statute, or otherwise), the Debtors shall comply with Federal Rule of Civil Procedure 26(b)(5), and the Debtors shall identify each document withheld from production in a written privilege log that provides: (a) the identity of each person who prepared and/or signed the document; (b) the identity of each person designated as an addressee; (c) the identity of each person who received any copy of the document; (d) the date of the document; (e) the subject matter of the document; (f) the type or nature of the document; and (g) the basis for withholding the document.

11. If a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, the Debtors must clearly indicate the portions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, the Debtors shall identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted documents.

12. If the Debtors object to any part of any document request, the Debtors shall produce all documents that are response to the portions of any of the document requests to which the objection does not apply.

13. If any document request is objected to on grounds of overbreadth, the Debtors shall respond to the document request as narrowed to conform to the objection within the period allowed for a response.

14. If any responsive documents or parts of documents have been destroyed, deleted, or otherwise disposed of, a list shall be provided setting forth as to each such document the following information to the extent known: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; (iv) the author of the document; (v) the recipients of the document; (vi) the date on which the document was destroyed, deleted or otherwise disposed of; (vii) the person or program that destroyed, deleted, or otherwise disposed of the document; and (vii) the reason that the document was destroyed, deleted or otherwise disposed of.

15. A request for a document shall be construed to include a request for any and all copies, versions and drafts of such document, and any and all transmittal sheets, cover letters, enclosures or attachments relating to such document.

16. If a refusal to produce documents is based on the grounds that the request is unreasonably burdensome, Debtors shall identify the approximate number and nature of documents needed to be searched, the location of the documents, and the number of person-hours and costs required to conduct the search.

## DOCUMENTS TO BE PRODUCED

1. All documents and communications concerning the events and statements set for in paragraphs 20-26 of the Second Motion to Extend including, but not limited to, all documents concerning the sale of the Doral, the selection of a stalking horse bidder, and any letters of intent.

2. All documents and communications concerning the events and statements set for in paragraphs 27-30 of the Second Motion to Extend including, but not limited to, all documents concerning the restructuring or replacement of the Hilton Management Agreements, and any economic encumbrances on the marketability of the Hilton Resorts.

3. All documents and communications concerning the events and statements set for in paragraphs 31-34 of the Second Motion to Extend including, but not limited to, all documents concerning the membership liabilities or refund obligations of the Resorts or the Clubs under the Membership Agreements or any other agreement

4. For the period of May 25, 2011, to the present:

    (a) All documents and communications concerning the stabilization and/or restructuring of the Debtor's operations.

    (b) All documents and communications regarding the financial status of the Debtors and the Resorts, including, but not limited to, all quarterly and yearly reports, financial analyses, budgets, income statements, profit and loss statements, and advanced booking information.

    (c) All documents and communications concerning the liquidity, liquidity outlook, cash flows and projected cash flows of the Resorts or the Clubs.

    (d) All documents and communications concerning the actual, estimated or projected value of the Debtors, the Debtors' assets, or the Resorts.

    (e) All documents and communications concerning the valuation of the Debtors' assets.

    (f) All documents and communications concerning economic forecasts for the Debtors, the Debtors' assets, or the Resorts.

    (g) All documents and communications concerning the GIC RE Offer.

    (h) All documents and communications concerning the treatment of GIC debt.

    (i) All documents and communications concerning the business plan for the Debtors.

    (j) All documents and communications concerning any bankruptcy exit plan, exit strategy, or end game for the Debtors.

(k) All documents and communications concerning the retention of Warnick and any and all recommendations or findings by Warnick, including, but not limited to, any written or oral report issued by Warnick regarding the Debtors, the Resorts, or the Hilton Management Agreements.

5. All documents that support or purportedly support any aspect of the following statements and representations:

(a) "The $170 million bid for the Doral will potentially deleverage the Debtors' outstanding prepetition debt by 11% and potentially reduce the Debtors' annual mortgage interest expense by approximately $9.5 million." (Second Motion to Extend ¶ 3).

(b) "Just to take a step back, we have $185 million of nominal liability on our books in respect of deposit liabilities. And there's no debate that reducing the present value of those liabilities by instituting caps is incredibly important. It provides for certainty and predictability of our cash flows. It allows us to say that we've reduced our liability by roughly fifty percent of their present value which can range anywhere between fifteen and 50 to $60 million of value depending on how you calculate the present value." (Burian testimony, 6/28/2011 Hrg. Tr. 81:2-11).

(c) "Through April, year-to-date RevPAR (daily revenue per available room, a combination of average daily rate and occupancy rate metrics) is 12.6% higher than last year. And year-to-date net operating income is approximately 18.7% greater than last year." (Supplemental Burian Declaration ¶ 21).

(d) "Year-to-date RevPAR (daily revenue per available room, a combination of average daily rate and occupancy rate metrics) is approximately 10% higher than last year. Year-to-date performance for the Resorts is up, with a 13% increase in net operating income over this time last year." (Second Motion to Extend ¶ 8).

(e) "The only thing I'm willing to tell you for sure is that I'm confident it's [the Debtors' assets] worth more today than it was in February, and it will be worth more at the end of the exclusivity period than it's worth today." (Burian Deposition 193:14-19).

(f) "Finally, the Hilton Management Agreements are a significant encumbrance on the marketability of the Hilton Resorts. Removing or modifying that encumbrance likely would increase the value of the Hilton Resorts by approximately 10% to 15%. Given the significant amount of the Debtors' cash flows accounted for by the Hilton Resorts, the incremental value to the Debtors estates could be very significant." (Second Motion to Extend ¶ 27).

6. All documents reflecting the capital expenditures referenced in the statement, "If we were just playing for upside for equity, keeping Doral is an easy decision. You take 30

million or 25 million, whatever the number is for cap ex, you put it in, you reposition it…" (Burian testimony, 6/28/2011 Hrg. Tr. 88:17-20).

Dated: New York, New York
September 6, 2011

DECHERT LLP

By: /s/ Kevin J. O'Brien
Michael J. Sage
Kevin J. O'Brien
Brian E. Greer
Jason O. Billy
Nicole B. Herther-Spiro
Scott C. Kessenick
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
michael.sage@dechert.com
kevin.obrien@dechert.com
brian.greer@dechert.com
jason.billy@dechert.com
nicole.hertherspiro@dechert.com
scott.kessenick@dechert.com

*Attorneys for 450 Lex Private Limited and C Hotel Mezz Private Limited*