KLESTADT & WINTERS, LLP
Tracy L. Klestadt
Joseph C. Corneau
570 Seventh Avenue, 17th Floor
New York, New York 10018
Tel:  (212) 972-3000
Fax:  (212) 972-2245

<span style="text-align:right">__Hearing Date__: May 17, 2012<br>11:00 a.m.</span>

Attorneys for The Arizona Biltmore Hotel
Condominiums Villas Association, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MSR RESORT GOLF COURSE LLC, *et al*. | : | Case No. 11-10372(SHL) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**OBJECTION OF THE ARIZONA BILTMORE HOTEL VILLAS
CONDOMINIUMS ASSOCIATION TO MOTION OF MSR RESORT GOLF
COURSE LLC, *ET AL.*, FOR ENTRY OF AN ORDER APPROVING
SETTLEMENT AGREEMENT WITH SALT RIVER PROJECT
AGRICULTURAL POWER DISTRICT, UNITED STATES OF AMERICA,
AND ARIZONA BILTMORE MASTER ASSOCIATION**

The Arizona Biltmore Hotel Villas Condominiums Association, Inc. (the "Association")

hereby submits its Objection (the "Objection") to the Motion of MSR Golf Course, LLC, *et al.*,

for the Entry of an Order Approving Settlement Agreement with Salt River Project Agricultural

Power District, United States of America, and Arizona Biltmore Master Association (the

"Motion"), and in support of the Objection, respectfully alleges as follows:

**Preliminary Statement**

The Motion should be denied. In connection with the settlement, valuable contract rights

in the form of the SRP-Association Joint Use Agreement (defined below) held by the

Association were terminated by SRP (defined below).  Although the Settlement Agreement

annexed to the proposed order granting the Motion as Exhibit 1 (the "<u>Settlement Agreement</u>")

does not expressly refer to it, it is clear that the termination of the SRP-Association Joint Use

Agreement was an integral component of the settlement. That MSR Biltmore Hotel, LP ("<u>MSR</u>

<u>Biltmore</u>" or "<u>Debtor</u>") announced the Settlement to the Arizona District Court (defined below)

more than two months prior to the termination of the SRP-Association Joint Use Agreement

confirms that such termination was indeed a term of the settlement, albeit one that was not set

forth in the Settlement Agreement.

In addition, the settlement is only a partial settlement of a litigation in which MSR

Biltmore sought a declaratory judgment against multiple parties, including the Association, that

it had a superior claim to use the Southeast Parking Lot (defined below), a claim that the United

States of America (the "<u>United States</u>") disputed. There was never an adjudication of that claim.

By the Settlement Agreement, the debtor MSR Biltmore Resort, LP ("<u>MSR Biltmore</u>" or

"<u>Debtor</u>") is obtaining license rights that it did not previously have, raising the possibility that

the United States was right that it in fact has and always had a superior claim to the Parking Lot,

and as a result, raises the issue of whether this Court has jurisdiction over property rights that

will come into existence only if the Bankruptcy Court approves the Settlement Agreement.

Finally, because the settlement affects the rights of a non-debtor party which is not party

to the settlement, the Court must review the settlement not only in terms of benefit to the MSR

Biltmore estate, but also in view of the fairness to third parties who are affected by it. As will be

described herein, the Association's rights are wiped out by the settlement. The lack of fairness to

the Association requires that the Motion be denied.

## Jurisdiction and Venue

1.　　　The United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has jurisdiction over the debtor MSR Biltmore and its property pursuant to 28 U.S.C. §§ 157 and 1334. Relief may be granted to the debtor MSR Biltmore pursuant to Federal Rule of Bankruptcy Procedure 9019. Venue is proper as to MSR Biltmore's chapter 11 case. However, to the extent the Motion seeks approval of the Settlement Agreement and related documents that has an effect on the property interests of third parties, the Association respectfully submits that the Bankruptcy Court does not have jurisdiction and that venue is not proper with respect thereto. The Association reserves all rights to seek redress in a court with jurisdiction over itself and non-debtor third parties.

## BACKGROUND

2.　　　On February 1, 2011 (the "Petition Date"), MSR Biltmore and 29 of its affiliates each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned Chapter 11 cases (the "Chapter 11 Cases"). MSR Biltmore continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.　　　A statutory committee of unsecured creditors was appointed by the Office of the United States Trustee for the Southern District of New York, consisting of (i) The Arizona Biltmore Hotel Condominiums Villas Association[1]; (ii) Kerry William Rose; (iii) Stationary Engineers Local 39 Pension Trust Fund; (iv) Gourmet Foods Hawaii; and (v) All Bright Cleaning Service, Inc.

---

[1] The President of the Arizona Biltmore Hotel Condominium Villas Association (the "Association") is Mr. Mark Finney, who is also the President of The Conlon Group Arizona, LLC.

4.      As of the date hereof, no trustee or examiner has been appointed in the Chapter 11 Cases.

### The Parties

5.      MSR Biltmore, a debtor herein, has asserted it is the owner of the Arizona Biltmore Hotel (the "Hotel").

6.      The Arizona Biltmore Hotel Master Association (the "Master Association") is an Arizona non-profit corporation originally formed in 1994 pursuant to a Master Declaration of Covenants, Conditions and Restrictions of the Arizona Biltmore Master Development Property. The Master Association was administratively dissolved in 2002 and reconstituted in 2008.

7.      The Master Association is *not* a debtor herein.

8.      The Arizona Biltmore Hotel Villas Condominiums Association (the "Association") is an Arizona non-profit corporation.

9.      The Salt River Project Agricultural Power District is an instrumentality of the state of Arizona.

### The Dispute Regarding the Parking Lot

10.      The respective rights of the United States, SRP, the Master Association, the Association, and others in the use of the Southeast Parking Lot (defined below) have long been the subject of dispute.

11.      Adjacent to the Hotel are approximately seventy-eight (78) condominium units (each a "Condominium" and collectively, the "Condominiums"). The Condominiums are not owned by the Hotel, but rather are owned by separate individuals and entities.

12.     The Condominiums were constructed in 1995 by the original developer of the Hotel, the Grossman Company ("Grossman"). The Condominiums were created under a certain Declaration of Covenants, Conditions and Restrictions dated December 12, 1994 (the "Association CCRs"). The CCRs, *inter alia*, create the Association, which is the representative body for the owners of the Condominiums. A copy of the Association CCRs is annexed to the Declaration of Tracy L. Klestadt in Support of Objection of The Arizona Biltmore Hotel Villas Condominiums Association to Motion of MSR Resort Golf Course LLC, *et al.*, for Entry of an Order Approving Settlement Agreement with Salt River Project Agricultural Power District, United States of America, and Arizona Biltmore Master Association (the "Klestadt Declaration") as **Exhibit A**.

13.     The Hotel and the Condominiums are adjacent to the Arizona Canal. North of the Arizona Canal and south of the Condominiums is a parcel of land that is used as parking for the Hotel and Condominiums (the "Southeast Parking Lot").

14.     The Association CCRs provide, among other things:

> 4.     Parking.     Each Unit shall have the right to the exclusive use of one covered parking space on Parcel 2, the location of which shall be determined and assigned by the Association. …The location of all parking spaces located on Parcel 2 is shown on the attached Exhibit "C"….*The Master Association* shall have full authority to operate, manage and use the unassigned parking spaces situated on Parcel 2 for the benefit of the users of the Hotel Property.

Association CCRs ¶ 4 (emphasis added).

15.     On April 20, 1995, SRP and the Association entered into the SRP-Association Joint Use Agreement. A copy of the SRP-Association Joint Use Agreement is annexed to the Klestadt Declaration as **Exhibit B**.

16.     The SRP-Association Joint Use Agreement acknowledges a dispute between SRP and the Association, and without waiver of their respective rights, SRP and the

Association (inaptly defined as the "Biltmore" in the SRP-Association Joint Use Agreement) agreed that the Association may use the property at issue "for access and the construction, operation, repair, replacement and maintenance of driveways, parking areas, landscaping, parking lights and related improvements." <u>See</u> SRP-Association Joint Use Agreement, § 2.1. In addition, the SRP-Association Joint Use Agreement specifically provides that it is not intended to and shall not benefit any third party not specifically named therein. <u>See</u> SRP-Association Joint Use Agreement, §25.

17.    Thus, the Association CCRs and the SRP-Association Joint Use Agreement each appear to grant two different parties substantially the same rights in the same property (the Association CCRs to the Master Association and the SRP-Association Joint Use Agreement to the Association), creating the dispute.

**<u>The Litigation</u>**

18.    On September 3, 2010, the Association commenced litigation in the Arizona Superior Court (the "<u>Arizona State Court</u>") encaptioned *Arizona Biltmore Condominium Association, Inc. v. The Arizona Biltmore Hotel Master Association*, Case No. CV2010-026686 (the "<u>State Court Litigation</u>"). A copy of the complaint (the "<u>State Court Complaint</u>") commencing the State Court Litigation is annexed to the Klestadt Declaration as **<u>Exhibit C</u>**. The State Court Litigation is pending as of the date hereof.

19.    On June 24, 2011, the debtor MSR Biltmore and the Master Association commenced litigation in the United States District Court for the District of Arizona (the "<u>Arizona District Court</u>") encaptioned *MSR Biltmore Resort <u>et al</u>. v. United States of America, <u>et al</u>.*, Case No. 2:11-CV-01252-FJM (the "<u>District Court Action</u>"). A copy of the complaint (the "<u>Federal</u>

Court Complaint") is annexed to the Klestadt Declaration as **Exhibit D**. The Federal Court

Litigation is pending as of the date hereof.

20.     In the Federal Court Complaint, MSR Biltmore and the Master

Association asserted that they had a right to use the Southeast Parking Lot that was superior to

the United States, SRP and the Association. Specifically, MSR Biltmore and the Master

Association alleged:

> [i]n fact, pursuant to 43 U.S.C. § 946, the United States possesses a right of way
> in the nature of a non-exclusive easement respecting the strip of land underlying
> the subject parking lot. This easement is held subject to the rights of MSR and the
> Master Association.

Federal Court Complaint ¶ 50.

21.     MSR Biltmore and the Master Association go on to allege that:

> "[p]laintiffs [MSR Biltmore and the Master Association] are entitled to a
> declaration that any interest possessed by the United States in the strip of land is
> in the nature of a non-exclusive easement, and that Plaintiffs [MSR Biltmore and
> the Master Association] have a superior right to that of the [Villas] Association,
> SRP and FCD to control, maintain, and use the subject parking lot."

Federal Court Complaint ¶ 53.

22.     The Association timely filed an answer to the Federal Court Complaint,

denying the allegations in the Federal Court Complaint salient to the dispute. A copy of the

Association's Answer is annexed hereto as **Exhibit E**.

23.     The United States filed a motion to dismiss the Federal Court Litigation

(the "Motion to Dismiss"), in which SRP joined. In its Motion to Dismiss, the United States

disputed the Hotel's allegations in the Federal Court Complaint, reciting the history of the land in

question as far back as 1894. A copy of the Motion to Dismiss is annexed to the Klestadt

Declaration as **Exhibit F**. Specifically, the United States disputed MSR Biltmore's assertions of

superior interest, alleging that it has and always had superior title:

7

> It is clear that plaintiffs' predecessors in interest knew that the United States claimed an interest in the land greater than a non-exclusive easement before June 24, 1999. One would be hard-pressed to find a more compelling proof that plaintiffs' predecessors in interest knew of the United States' claim to an exclusive interest in the land than the letter the Hotel's attorneys sent to SRP in 1998. (Exhibit 13). Not only does the letter show that the Hotel knew the United States claimed an interest in the land, but it also shows that the Hotel knew the United States claimed an exclusive interest in the land….

See Motion to Dismiss, page 9 (emphasis added).

24.     To date, there has not been judicial determination of who owns the Parking Lot, leaving the parties' respective rights and interests in the Southeast Parking Lot in dispute.

25.     On January 5, 2012, MSR Biltmore and the Master Association announced to the Arizona District Court that they had resolved disputed issues between them, the United States and SRP (but not the Association). See Joint Notice of Partial Settlement (the "Partial Settlement Notice") filed in the District Court Action, a copy of which is annexed to the Klestadt Declaration as **Exhibit G**. The Partial Settlement Notice did not disclose the terms of the purported settlement, but instead requested sixty (60) days to prepare settlement papers.

26.     Approximately two months later, on March 13, 2012, SRP purportedly terminated the SRP-Association Joint Use Agreement. Two weeks after that, the Motion was filed by MSR Biltmore.

27.     Thus, although the Settlement Agreement is carefully drafted to appear not to implicate the Association's rights, there can be no doubt that SRP's cancellation of the SRP-Association Joint Use Agreement was an integral part of the Settlement.

**The Purported Termination of the SRP-Association**
**Joint Use Agreement and The Settlement**

28.     By correspondence dated March 13, 2012, SRP purportedly terminated the

SRP-Association Joint Use Agreement (among others). Specifically, the March 13, 2012

correspondence states:

> "[w]e are writing you this letter, advising you that per the written direction of the
> United States, effective immediately SRP is terminating the agreement between
> SRP and the Arizona Biltmore Hotel Villas Condominium Association (Villas
> Association), commonly known as the Joint Use Agreement. I am attaching to this
> letter, a letter that was received by SRP on March 13, 2012 from the United States
> directing SRP to cancel four so called 'joint use agreements'….What this means
> for the Villas Association is that neither its use, nor that of SRP, is any longer
> governed by provisions of that agreement."

A copy of the March 13, 2012 correspondence from SRP, together with the March 13, 2012

letter from the United States Department of the Interior to which it refers, is annexed to the

Klestadt Declaration as **Exhibit H**.

29.     The Association maintains that the purported termination of the SRP-

Association Joint Use Agreement was without legal basis.

30.     On or about March 27, 2011, the Association served SRP with a Notice of

Claim Pursuant to A.R.S. § 12-821.01. The Association has determined to commence litigation

against SRP, and perhaps others, for among other things, breach of contract and breach of the

duty of good faith and fair dealing. In the course of that litigation, the Association intends to seek

discovery from SRP, the United States, the Master Association and MSR Biltmore regarding,

among other things, the role of the Master Association and the Debtors in SRP's purported

termination of the SRP-Association Joint Use Agreement.

## The Settlement

31.     The Debtors seek approval of the Settlement Agreement, pursuant to

Federal Rule of Bankruptcy Procedure 9019, annexed to the proposed order granting the Motion

as Exhibit 1. The key terms of Settlement Agreement are:

- MSR Biltmore and the Master Association agree to the termination of all of their rights in prior joint use agreements (including the SRP-Association Joint Use Agreement, which they were not a party to and have no right in);

- SRP, acting on behalf of the United States, will issue four (4) new licenses to MSR Biltmore and the Master Association (including a license to use the Southeast Parking Lot); and

- SRP agrees to not issue any license to the Association (for any purpose, including use of the Southeast Parking Lot).

32.     The Settlement Agreement is carefully drafted to provide that MSR

Biltmore and the Master Association release and terminate all rights and privileges in to use the

Arizona Canal pursuant to the existing licenses, joint use agreements and other grants of rights

from the United States, SRP, and FCD, including:

> The interest, if any, of MSR and the Master Association in the Joint Use Agreement dated April 20, 1995 and recorded April 21, 1995 as Document No. 95-0224138 of Official Records, and rerecorded on December 11, 1997 as Document No. 97-0870355 of Official Records, and the Amendment and Reaffirmation of Joint Use Agreement recorded October 19, 1999 as Document No. 99-0960198 of Official Records, and rerecorded November 16, 1999 as Document No. 99-1045454 of Official Records (together, the "Villas Joint Use Agreement")…

Settlement Agreement ¶1(a)(vi).

33.     By its terms, the Settlement Agreement essentially concedes that MSR

Biltmore did not have a right to use the Southeast Parking Lot that was superior to the United

States as it had alleged in the Federal Court Complaint. If it in fact had such a right, MSR

Biltmore would not need the licenses that will be granted to it under the Settlement Agreement.

10

34.    The Settlement Agreement does not resolve the disputes in the State Court Litigation or the Federal Court Litigation. Specifically:

- Neither the Settlement Agreement nor any of the license agreements state who owns the subject parking lot, which can only be construed as meaning that the parties to the Settlement Agreement decided to "kick the can down the road," or alternatively, that that the Debtor has conceded that the United States has superior title but did not specifically so state because it would be an admission against interest in the State Court Litigation and the Federal Court Litigation; and

- Because the Settlement Agreement is between less than all of the parties to the State Court Litigation and the Federal Court Litigation that sought declaratory relief with respect to all parties named therein, there remain pending causes of action against the parties to the Settlement Agreement (although, as described below, the Debtor has already attempted to use the as-yet unapproved settlement to argue mootness in the State Court Litigation).

- The dispute as to ownership is now before three courts (including this one) and there has been no adjudication of title. This unresolved status is nothing more than a continuation of the status quo.

35.    SRP's purported termination of the SRP-Association Joint Use Agreement was undoubtedly a component of, and was required, to allow the settlement to occur, allowing the Debtors, SRP, and the United States to avoid an adjudication of the Federal Court Litigation and the State Court Litigation, which may have resulted in judgment in favor of the Association. Had that occurred, the Hotel would have lost invaluable parking space for its guests that would have significantly affected its ability to operate under existing zoning and land use restrictions.

36.    In other words, the settlement, if approved, would allow MSR Biltmore to "freeze-out" the Association.

## **OBJECTION**

37.    As described above, in the Federal Court Litigation, MSR Biltmore and the Master Association jointly alleged that they had a superior right to control, maintain and use

11

the Parking Lot, over and above the Association, SRP and FCD [the Maricopa County Flood Control District]. The Hotel's assertion of superior title has never been adjudicated, and notably, is not borne out by the Settlement Agreement.  The Settlement Agreement does not even reference the Hotel's unproven claim to superior title in the land. Thus, whether MSR Biltmore has or ever had any property interest in the Parking Lot, and whether the Court has jurisdiction to approve a settlement of any dispute related thereto, is very much in doubt.

38.     The Settlement Agreement does not determine the controversy either— rather, it freezes out the Association, and incompletely resolves the Federal Court Litigation, leaving the adjudication of the Association's rights, whatever they are, in question.

39.     The Settlement Agreement is very carefully drafted in an effort to distance it from the termination of the SRP-Association Joint Use Agreement. Clearly, though, but for the termination of the SRP-Association Joint Use Agreement, the Settlement would not have been possible, and in fact, the termination of the SRP-Association Joint Use Agreement was an integral part of the Settlement. Any other interpretation is not possible. The result is one that is patently unfair and prejudicial to the Association, and accordingly, the Motion should be denied pursuant to Federal Rule of Bankruptcy Procedure 9019.

40.     Adding to this obvious unfairness is the fact MSR Biltmore, which had intervened in the State Court Litigation, has already used the as-yet unapproved Settlement Agreement offensively against the Association in the State Court Litigation, suggesting that the State Court Litigation may be dismissed as moot.

41.     On April 24, 2012, MSR Biltmore filed a document in the State Court Litigation entitled MSR Biltmore Resort LP's Notice of Changed Circumstances Regarding Pending Motion for Summary Judgment of Arizona Biltmore Hotel Villas Condominiums

Association Inc. (the "State Court Statement"). A copy of the State Court Statement is annexed

to the Klestadt Declaration as **Exhibit I**.

42. In the State Court Statement, MSR Biltmore asserts that the SRP-

Association Joint Use Agreement has been terminated and that the Master Association was

granted a license to use the Parking Lot [pursuant to the Settlement]. As a result, any rights the

Association had to the Parking Lot no longer exist, and therefore the State Court Complaint

should be dismissed.

43. The Association respectfully submits that such use of a settlement is not

consistent with the purposes and policies behind the policy of favoring settlements under Federal

Rule of Bankruptcy Procedure 9019, and MSR Biltmore's tactic of offensive use of the

settlement should not be countenanced by this Court.

**A. The Court Does Not Have Jurisdiction To Hear or Approve the Settlement Because, Up To The Point of the Settlement, No Debtor Has nor Had Any Proven Interest in the Parking Lot.**

44. Prior to the Settlement, MSR had alleged (and the United States denied)

that it had superior title to the Southeast Parking Lot. As discussed above, that allegation was not

adjudicated. The United States, in its Motion of Dismiss the Federal Court Complaint asserted

that it, not the Hotel, had *exclusive* rights in the Southeast Parking Lot. In addition, MSR had

alleged that pursuant to the Association CCRs, the Master Association (not MSR Biltmore) had

"full authority to operate, manage and use the unassigned parking spaces." Federal Court

Complaint ¶ 27. *The Master Association is not a debtor herein.*

45. By the settlement, SRP is to issue the license agreements to MSR Biltmore

and the Master Association annexed to the Motion as Exhibit D and Exhibit G, respectively.

These new licenses are a *new* property right. Stated another way, unless and until this Court

13

approves the Settlement Agreement, *the only interest that any Debtor herein has* in the parking lot are those referred to in the Federal Court Complaint, which were denied by the Association and the United States in the still pending District Court Litigation. What property of the Debtor's estate is implicated by the settlement is unknown, and is not stated in the Settlement Agreement.

46.    Section 1334(b) of title 28 of the United States Code is the fountainhead of bankruptcy jurisdiction.  That section provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b) (emphases added).  The district courts generally refer such matters to the bankruptcy judges in their districts (i.e., to bankruptcy courts).  <u>See</u> 28 U.S.C. § 157(a).

47.    Cases arising under title 11 or arising in a case under title 11 are generally deemed "core" matters, as to which a bankruptcy court can properly enter final judgment, subject only to federal appellate review under 28 U.S.C. § 158.  <u>See</u> 28 U.S.C. § 157(b).  Such matters can be said to lie "at the core" of federal bankruptcy jurisdiction.

48.    With respect to matters that are merely related to cases under title 11, bankruptcy courts may hear but not determine the same.  This means that bankruptcy courts must submit proposed findings of fact and conclusions of law to the district court for de novo review; only the district court has the authority to enter final judgment thereon.  <u>See</u> 28 U.S.C. § 157(c)(1).  Thus, bankruptcy courts have subject matter jurisdiction over these non-core matters on the one hand, but they do not have jurisdiction to enter final judgments.  This lesser jurisdictional authority is commonly known as "related-to jurisdiction".

49.    Where a bankruptcy court does not have at least related-to jurisdiction, the court is entirely without subject matter jurisdiction over that matter.  <u>See</u>, <u>e.g.</u>, <u>Kokkonen v.</u>

Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute…."). Thus, related-to jurisdiction can be said to lie "at the outskirts" of bankruptcy court jurisdiction.

50.    For related-to jurisdiction to exist, there must be some minimum, meaningful nexus between the related-to proceeding and the bankruptcy case. One of the most widely accepted articulations of this concept was announced in Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984).

51.    In *Pacor*, the court noted that the test for related-to jurisdiction is whether the outcome of the proceeding in question "could conceivably have any effect on the [bankruptcy] estate[,]" and added that "the proceeding need not necessarily be against the debtor…." *Pacor*, 743 F.2d at 994 (internal citation and emphasis omitted). However, the *Pacor* court expressly circumscribed related-to jurisdiction by adding that such jurisdiction does not extend to disputes among non-debtor third parties in which the estate has no direct interest. See id. at 994-995. Even if the outcome of a third-party dispute can theoretically have an indirect effect on the estate — e.g., by setting the stage for a potential contribution claim against the debtor — such indirect connections are simply too attenuated to support related-to jurisdiction. See id. Accord In re Federal-Mugul Global, Inc., 300 F.3d 368 (3d Cir. 2002).

52.    As the United States Supreme Court has observed, the *Pacor* conceivable-effect test has (i) been adopted with little or no variation by the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits; and (ii) been adopted as slightly modified by the Second and Seventh Circuits. See Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995) (collecting cases).

53.      Moreover, added the *Celotex* court, regardless of which test is applied, it is "clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." See id.; accord In re Sportstuff, Inc., 430 B.R. 170, 178 & 178 n.15 (B.A.P. 8th Cir. 2010) (finding bankruptcy court lacked jurisdiction or authority to "impair or extinguish" contract and/or property rights between non-debtor third parties); In re Videocart, Inc., 165 B.R. 740, 744 (Bankr. D. Mass. 1994) (finding no related-to jurisdiction because "appearance of the plaintiff as a creditor in the Debtor's schedules is irrelevant.  The present action is by a non-debtor against non-debtors.  A recovery by the plaintiff … will not directly affect the Debtor's bankruptcy estate.") (emphasis added); In re Gardner, 913 F.2d 1515 (10th Cir. 1990) (bankruptcy court does not have jurisdiction over third-party dispute unless it involves property of the estate, distribution of assets, or administration of the estate).

54.      Here, although the debtor MSR Biltmore claimed a right to use the Southeast Parking Lot in the Federal Court Litigation, that claim was disputed by the United States and was never adjudicated. In addition, in the Federal Court Complaint, MSR Biltmore and the Master Association alleged that by the Association CCRs, the Master Association (but *not* the debtor MSR Biltmore) had complete authority to operate the Southeast Parking Lot. Federal Court Complaint, ¶ 27. Thus, what rights, if any, the debtor MSR Biltmore has or ever had in the Southeast Parking Lot is not clear, and whether the Court has jurisdiction over such property rights, if any, is unknown.

55.      Adding further uncertainty to the Bankruptcy Court's jurisdiction with respect to the Southeast Parking Lot is the fact that the Settlement Agreement does not concede or acknowledge that MSR Biltmore has or had any interest such as those alleged in the Federal

16

Court Complaint, nor does not recite any other interest that MSR Biltmore has or had, except for the licenses granted Settlement Agreement.

56.     In fact, the only rights of MSR Biltmore to the Southeast Parking Lot that have not been disputed are those to be granted to MSR Biltmore pursuant to the settlement, if the Bankruptcy Court approves it.

57.     Stated differently, MSR Biltmore cannot create jurisdiction where it did not exist before by entering into a settlement and creating new property rights that affect the estate of MSR Biltmore.

58.     Accordingly, the Association respectfully submits that the Bankruptcy Court does not have jurisdiction to approve the Settlement Agreement because there is no proven interest of MSR Biltmore in the Southeast Parking Lot except for those which arise for the first time after the Petition Date pursuant to the Settlement Agreement.

## B.  The Settlement Should Not Be Approved Pursuant to Federal Rule of Bankruptcy Procedure 9019 Because It Unfairly Prejudices the Rights of a Non-Debtor

59.     If the Court concludes that the settlement does not implicate jurisdictional concerns, the Court should nonetheless refuse to approve the settlement on grounds of inherent unfairness.

60.     While it is true that bankruptcy courts evaluating compromises under Rule 9109 must consider the best interests of the bankruptcy estate, this determination does not end the inquiry.  Like other aspects of reorganizations, compromises must also be "fair and equitable".  See, e.g., Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 645 (3d Cir. 2006) (citing Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1968)).

61.     Under the fair and equitable standard, courts should look beyond the settlement per se and consider the fairness of its terms with respect to non-settling parties as well.  See, e.g., In re Nutraquest, 434 F.3d at 645; accord In re AWECO, Inc., 725 F.2d 293, 298 (5th Cir. 1984) ("looking only to the fairness of the settlement as between the debtor and the settling claimant [and ignoring third-party rights] contravenes a basic notion of fairness"); Cullen v. Riley (In re Masters Mates & Pilots Pension Plan), 957 F.2d 1020, 1026, 1031 (2d Cir. 1992) (holding that "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval," and requiring determination that "no one has been set apart for unfair treatment"); FDIC v. Jones (In re Jones), 966 F.2d 169, 173 (5th Cir.1992) (noting that §105(a) of the Bankruptcy Code imposes upon courts the duty to avoid unfairness and injustice); Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 754 (5th Cir. 1995).

62.     Here, the Settlement implicates valuable contract rights of a third party. Although the Settlement Agreement does not itself provide for the purported termination of the SRP-Association Joint Use Agreement (arguably by design), it is abundantly clear that the purported termination of the SRP-Association Joint Use Agreement was either an unstated condition precedent to the settlement or was part and parcel of the settlement. At a minimum, the announcement of the settlement being followed by the purported termination of the SRP-Association Joint Use Agreement leads to the conclusion that it was, at the very least, a component of the Settlement, whether it was built into the Settlement Agreement or not.

63.     The long history of the disputes relating to the Southeast Parking Lot makes it clear that the respective rights of the United States, SRP, MSR Biltmore, the Master Association and the Association are murky, at best. The Settlement Agreement is an effort by

18

MSR Biltmore and the Master Association to avoid a judgment adverse to them, but at the expense of the Association's right to an adjudication of the issues. The freeze-out that results from the Settlement Agreement is unfair to the Association and should not be approved by this Court.

**C.  The Association is not a Party to the Settlement Agreement, is Not Bound by it, and Approval of the Settlement Should not have any Res Judicata, Collateral Estoppel <u>or other Preclusive Effect on the Association.</u>**

64.     Should the Court determine that it has jurisdiction to approve the Settlement Agreement and approves the Settlement Agreement, such approval should not have any preclusive effect on the Association.

65.     Only the parties before the Court in a declaratory judgment action are bound by that declaratory judgment.  <u>See</u> <u>YWCA v. Kugler</u>, 463 F.2d 203, 204 (3d Cir. 1972); <u>Martinez v. Maverick County Water Control & Improv. Dist.</u>, 219 F.2d 666, 672 (5th Cir. Tex. 1955) ("declaratory judgment would be binding only on those parties actually before the court"); <u>DP Envtl. Servs. v. Bertlesen</u>, 834 F. Supp. 162, 164 (M.D.N.C. 1993) ("a declaratory judgment is binding only on those parties before the court"); <u>Watson v. Branch County Bank</u>, 380 F. Supp. 945, 957 (W.D. Mich. 1974) ("a declaratory judgment binds only the named parties").  <u>See</u> <u>also</u> <u>Maryland Casualty Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 274 (1954); <u>Allstate Ins. Co. v. Thompson</u>, 121 F. Supp. 696, 701 (D. Ark. 1954) (citing <u>Maryland Casualty Co.</u>, 312 U.S. at 274; <u>Delno v. Market St. Ry. Co., et al.</u>, 124 F.2d 965, 968 (9th Cir. 1942); <u>Angell, et al. v. Schram</u>, 109 F.2d 380, 382 (6th Cir. 1940); <u>Central Surety & Ins. Corp. v. Norris</u>, 103 F.2d 116 (5th Cir. 1939); <u>Lumbermens Mut. Casualty Co. of Illinois (American) v. Cieri</u>, et al., 23 F. Supp. 435, 436 (M.D. Pa. 1938); <u>Bethlehem Shipbuilding Corporation, Limited v. Nylander</u>, 14 F. Supp. 201, 207 (S.D. Ca. 1936)).

66.     Similarly, only the parties to a settlement can be bound by it. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002) ("It goes without saying that a contract cannot bind a nonparty."); *see also Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007) (applying "fundamental principle of contract law prohibiting the parties to a contract from binding nonparties") (citing *Waffle House*, 534 U.S. at 294); *F.B.T. Prods., LLC v. Aftermath Records*, 2011 U.S. Dist. LEXIS 126159, at *28 (C.D. Cal. Oct. 31, 2011) ("[A] contract cannot bind a nonparty, whether the nonparty is an intended beneficiary or not.") (citing *Waffle House*, 534 U.S. at 294); *accord Energy 2001 v. Pac. Ins. Co.*, 2010 U.S. Dist. LEXIS 138272, at *5 (E.D. Cal. Dec. 21, 2010); *Bhadra v. State Farm Fire & Cas. Co.*, 2010 U.S. Dist. LEXIS 64618, at *6 (D. Nev. June 1, 2010); *Alvarado v. FedEx Corp.*, 2009 U.S. Dist. LEXIS 122581, at *66 (N.D. Cal. Dec. 18, 2009); *Offshore-Inland Servs. of Ala., Inc. v. R/V Deepocean Quest (ex Nadir)*, 2007 U.S. Dist. LEXIS 73534, at *14 (W.D. Wash. Oct. 2, 2007).

67.     Therefore, this Court's approval of the Settlement Agreement as among the United States, SRP, the Master Association and MSR Biltmore cannot have preclusive effect on the Association to assert claims against any of them. Any language to the contrary in the Settlement Agreement must be stricken, in particular, the last sentence of paragraph 3 and paragraph 8 of the Settlement Agreement.

68.     The Association respectfully submits that to the extent this Court's approval of the Settlement Agreement could be construed as "blessing" the substance thereof, any order the Court enters should specifically provide that the order shall have no effect on the rights of parties other than those to the Settlement Agreement, and no findings of fact or conclusions of law are applicable to, or preclusive upon, any party other than the parties to the Settlement Agreement in any proceeding in any other court other than those to the Settlement

Agreement, and such order should specifically state that jurisdiction is limited to enforcement of the Settlement Agreement as between the settling parties.

### Conclusion

The Settlement Agreement purports to grant new property rights in the form of a license to use the Southeast Parking Lot to MSR Biltmore. What interests, if any, MSR Biltmore had in the Southeast Parking Lot before Bankruptcy Court approval of the Settlement Agreement was subject to dispute, and remains unresolved, raising the question of whether any rights exist (other than those granted pursuant to the Settlement Agreement) that the Bankruptcy Court has jurisdiction to affect. Even if the Bankruptcy Court has jurisdiction, the Bankruptcy Court should not approve the Settlement Agreement because it either directly or indirectly necessitated the termination of third party contract rights, causing substantial prejudice to the Association, which prejudice is only furthered by MSR Biltmore's offensive use of the Settlement Agreement to attempt to moot the still pending State Court Litigation and the Federal Court Litigation. Finally, if the Court is inclined to exercise jurisdiction and approve the Settlement Agreement, any order entered should clearly specify that it has no effect on any party other than those to the Settlement Agreement in any proceeding in any other court. For all of these reasons, the Motion should be denied.

**WHEREFORE**, the Association requests that the Court enter an order denying the

Motion, or granting such other, further or different relief as is just under the circumstances.

Dated:   New York, New York
         May 10, 2012

KLESTADT & WINTERS, LLP


By:  _/s/ Tracy L. Klestadt___
         Tracy L. Klestadt
         Joseph C. Corneau
570 Seventh Avenue, 17th Floor
New York, NY 10018-1603
(212) 972-3000

Attorneys for The Arizona Biltmore Hotel
Villas Condominiums Association, Inc.