Hearing Date and Time: September 10, 2012 at 9:30 a.m.

Lee S. Attanasio
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300 (tel)
(212) 839-5599 (fax)

-and-

Richard W. Havel
Gabriel R. MacConaill
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
(213) 896-6000 (tel)
(213) 896-6600 (fax)

Counsel for MLIC Asset Holdings II LLC

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MSR RESORT GOLF COURSE, *et al.*, | Case No. 11-10372 (SHL) |
| Debtors. | (Jointly Administered) |

**METLIFE'S STATEMENT OF SUPPORT AND RESERVATION OF RIGHTS WITH
RESPECT TO THE MOTION OF MSR RESORT GOLF COURSE LLC, *ET AL.*, FOR
THE ENTRY OF AN ORDER (A) APPROVING AND AUTHORIZING THE DEBTORS
TO ENTER INTO AND PERFORM UNDER THE STALKING HORSE COMMITMENT
LETTER, (B) APPROVING BIDDING PROCEDURES, (C) APPROVING BID
PROTECTIONS, (D) SCHEDULING BID DEADLINES AND AN AUCTION, AND (E)
<u>APPROVING THE FORM AND MANNER OF NOTICE THEREOF</u>**

MLIC Asset Holdings II LLC ("MetLife"), transferee of Metropolitan Life Insurance

Company, the assignee of the original lender on the first Mezzanine Loan,[1] by and through its

undersigned counsel, hereby submits this statement of support and reservation of rights (this

---

[1] As defined in the Debtors' DIP Loan Motion [Docket No. 107].

"Statement and Reservation") with respect to the Debtors'[2] *Motion of MSR Resort Golf Course LLC, et al., for the Entry of an Order (A) Approving and Authorizing the Debtors to Enter Into and Perform Under the Stalking Horse Commitment Letter, (B) Approving Bidding Procedures, (C) Approving Bid Protections, (D) Scheduling Bid Deadlines and an Auction, and (E) Approving the Form and Manner of Notice Thereof* [Docket No. 1417] (the "Bidding Procedures Motion"). In support of this Statement and Reservation, MetLife respectfully states as follows:

### Statement of Support

1. MetLife fully supports the Debtors' selection of GIC RE as the stalking horse bidder and the GIC RE Stalking Horse Bid as the bid that will set the floor for values in the upcoming Auction. MetLife is also supportive of the Debtors' efforts to market their assets to solicit Cash Overbids, which will provide the Debtors with the opportunity to truly maximize the value of their assets. As discussed below, however, MetLife reserves all of its rights with respect to any non-cash bid made at the Auction.

2. In recognition of the value and certainty that the Auction process will provide, MetLife has agreed to waive default interest for cash bidders, subject to the terms of the Cash Overbid Waterfall and the MetLife Order. MetLife agreed to this waiver of default interest in order to encourage bidding and help to ensure that the Auction produces the highest or otherwise best offer for the Debtors' assets.

### Reservation of Rights

3. MetLife reserves all of its rights with respect to the Debtors' selection of a non-cash bid as the Successful Bid. Specifically, MetLife has not consented to any plan treatment

---

[2] Capitalized terms undefined herein shall have the meanings ascribed to them in the Bidding Procedures Motion.

2

other than payment in full in cash (subject to the terms of the MetLife Order and the Bidding Procedures), and questions how a non-cash bid fraught with execution risk could ever be higher or otherwise better than the risk-free treatment provided by the GIC RE Stalking Horse Bid or a Cash Overbid.

4.   Although the Debtors have discretion, in their business judgment, to select the Successful Bid, that "discretion is not without limit." In re Bakalis, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998).  The Debtors' exercise of discretion is guided by their duty to select the bid that provides the highest or otherwise best value to the estates.  Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 659 (S.D.N.Y. 1992) ("In an auction, the officers and directors of [the debtor] would have a duty, analogous to the duty in Revlon, to attract the highest price for the estate.").

5.   Central to the determination of "highest or otherwise best" is a comparison of the risks associated with competing bids.  The "'highest' bid is not always the 'highest and best' bid."  In re Bakalis, 220 B.R. at 533.  The Debtors must consider the relative risks presented by any competing bids and avoid exposing their estates and creditors to undue risk.  In re Bakalis, 220 B.R. at 532-34 (approving the trustee's selection of a "lower" bid which avoided exposing "the estate to a much greater risk of, among other things, a failed closing and the associated chance of being left with a devalued asset").  Specifically, in this case, where the successful bid will be implemented pursuant to a plan, essential considerations include the degree of certainty of confirming a plan and closing any sale along with the speed with which such confirmation and closing is attainable.  See id. at 533 (analyzing the trustee's judgment regarding "the perceived certainty and estimated rapidity with which the transaction would likely close").  The

3

relative lack of risk in one bid can outweigh another riskier bid that has a facially "higher" value.  Id.

6.   The Debtors' bid selection is subject to the Court's review to ensure that the appropriate decision to enhance the estates' value is being made.  In re Metaldyne Corp., 409 B.R. 661, 668-69 (Bankr. S.D.N.Y. 2009).  The Court has the authority to refuse to approve a sale recommended by the Debtors if it is aware of another proposal which, from the estate's perspective, is better.  G-K Dev. Co. v. Broadmoor Place Invs. L.P. (In re Broadmoor Place Invs. L.P.), 994 F.2d 744, 745-46 (10th Cir. 1993) (affirming the decision to approve a sale to a "lower" bidder where the "higher" bid was subject to financing and other contingencies).  As Judge Gerber concluded, "[i]f this Court were to believe, for half a second, that the Debtors had spurned a better offer to the detriment of their fiduciary duties, this Court would not hesitate to invoke its powers."  In re Global Crossing Ltd., 295 B.R. 726, 745 (Bankr. S.D.N.Y. 2003).

7.   In evaluating competing bids and risks, this Court has previously ruled that the amount of cash paid, as opposed to securities issued, by a bidder is a critical factor.  In re Metaldyne Corp., 409 B.R. at 669.  In Metaldyne, Judge Glenn approved the debtors' selection of an all-cash stalking horse bid instead of a facially higher competing stalking horse bid.  Id. at 669-70.  In that case, the competing stalking horse bidder proposed to deliver a note that made up over 60% of the amount of its bid.  Id. at 669.  Ultimately, Judge Glenn agreed with the debtors and found that the all-cash bid was in fact a higher and better offer than the competing bid with its significant non-cash component.  Id. at 669-70.

8.   Only a Cash Overbid could be better than the GIC RE Stalking Horse Bid at this stage of these cases.  Compared with the GIC RE Stalking Horse Bid or a Cash Overbid, a non-cash bid is fraught with risks for these estates and creditors.  It is likely that a non-cash bid

4

LA1 2537634

would be premised on a plan that seeks to impose nonconsensual cramdown treatment on Midland, MetLife and other creditors, including Hilton.  This type of cramdown plan faces a staggering array of legal and factual hurdles prior to confirmation and closing, and is likely to be laden with protracted litigation, resulting in enormous expense and delay.  Each aspect of any nonconsensual treatment surely will be hotly contested, including interest rate and loan terms, the existence of an impaired accepting class at every Debtor, and ultimate plan feasibility.

9. Presented with the GIC RE Stalking Horse Bid or a Cash Overbid on the one hand and a non-cash, nonconsensual cramdown bid on the other, the Debtors are faced with a choice between certainty and risk.  After seventeen months of pursuing initiatives, litigating with hotel managers, and searching for equity financing, the time for certainty has come.

| | |
|---|---|
| Dated: New York, New York<br>August 31, 2012 | SIDLEY AUSTIN LLP<br><br>By:  /s/ Lee S. Attanasio_____<br>Lee S. Attanasio<br>787 Seventh Avenue<br>New York, NY 10019<br>(212) 839-5300 (tel)<br>(212) 839-5599 (fax)<br><br>-and-<br><br>Richard W. Havel<br>Gabriel R. MacConaill<br>SIDLEY AUSTIN LLP<br>555 West Fifth Street, Suite 4000<br>Los Angeles, CA  90013<br>(213) 896-6125 (tel)<br>(213) 896-6600 (fax)<br><br>Attorneys for MLIC Asset Holdings II LLC |

LA1 2537634